UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SHANDALE C. WATKINS | ) | |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | **21 CV3547** |
| BNSF RAILWAY COMPANY, a Delaware | ) | |
| Corporation, Brandon Mulberry, Individually and | ) | |
| In his Official Capacity as Chief Mechanical Officer of | ) | |
| Chicago Div, Michael Haynes Individually and in his | ) | **JDG:** |
| Official Capacity as GM, Kevin Bartee, Individually | ) | |
| And in his Official Capacity as Asst. GM, and Anna | ) | |
| Hosmer, Individually and in her Official Capacity as | ) | |
| Developer, | ) | |
| Defendants. | ) | |

## COMPLAINT AT LAW

NOW COMES Plaintiff **SHANDALE C. WATKINS** (hereinafter **"WATKINS"** OR "Plaintiff") by and through his attorney Calvita J. Frederick, and complaining of the Defendants, **BNSF RAILWAY COMPANY,** (hereinafter "BNSF" or "Defendant BNSF")**, and Brandon Mulberry, Individually and in his Official Capacity as Chief Mechanical Officer of Chicago Div., Michael Haynes Individually and in his Official Capacity as GM, Kevin Bartee, individually and in his Official Capacity as Asst. GM, , and Anna Hosmer, Individually and in her Official Capacity as Developer,** collectively "Defendants" states as follows:

## THE PARTIES

1. PLAINTIFF WATKINS is a male, citizen of the United States, and at all times relevant thereto was a resident of the City of Matteson, County of Cook, and the State of Illinois.

2. DEFENDANT BNSF, is a Delaware corporation, registered and licensed to do business within the State of Illinois, Today's BNSF Railway is the product of nearly 400 different

1

railroad lines that merged or were acquired over the course of 170 years, that provides railway services locally within the City of Chicago, throughout the State of Illinois, and nationally. BNSF is a Delaware, for profit corporation with its principal place of business located at 2650 Lou Menk Dr., Ft. Worth TX 76131.

3. DEFENDANT Brandon Mulberry (hereinafter "Mulberry" or "Defendant Mulberry") is a White male, citizen of the United States and at all times relevant thereto was believed to be a resident of the City of Chicago, County of Cook, State of Illinois. At all times relevant hereto, Mulberry was the Chief Mechanical Officer of the Chicago Division where Watkins worked. Mulberry had decision making authority for promotions and discipline.

4. DEFENDANT Michael Haynes (hereinafter "Haynes" or "Defendant Haynes") is a Black male, citizen of the United States and at all times relevant thereto was believed to be a resident of the City of Chicago, County of Cook, State of Illinois. At all times relevant hereto, Haynes was the General Manager at Chicago Carwith where Watkins worked. Haynes had decision making authority for promotions and discipline.

5. DEFENDANT Kevin Bartee (hereinafter "Bartee" or "Defendant Bartee") is a Black male, citizen of the United States and at all times relevant thereto was believed to be a resident of the City of Chicago, County of Cook, State of Illinois. At all times relevant hereto, Bartee was the Assistant General Manager at Chicago Carwith where Watkins worked. Bartee had decision making authority for promotions and discipline.

6. DEFENDANT Anna Hosmer (hereinafter "Hosmer" or "Defendant Hosmer") is an Asian/Latino female, citizen of the United States and at all times relevant thereto was believed to be a resident of the City of Chicago, County of Cook, State of Illinois. At all

times relevant hereto, Hosmer was the Developer assigned to Watkins at Chicago Carwith where Watkins worked. Hosmer had input in decisions related to promotions and discipline.

7. BNSF employs more than 100 people at their Chicago locations.

8. Mulberry, Haynes, Bartee, and Hosmer were all employed by Defendant BNSF, and were "employees" of Defendant BNSF within in the meaning of 42 U.S.C. § 2000e(f).

## JURISDICTION AND VENUE

9. Pursuant to 28 U.S.C. § 1332(a)(1), this Court properly has jurisdiction over this matter. This Court has subject matter jurisdiction over these claims because they arise under the laws of the United States pursuant to 28 U.S.C. § 1331.

10. Venue is proper in the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. §§ 1391(b) and (c) because all of the events or omissions giving rise to these claims occurred in the venue.

11. Pursuant to 28 U.S.C. § 1367(a) this Court has pendant or supplemental jurisdiction over all other claims including the state law claims that are so related to claims in the action within the federal court's original jurisdiction that they form part of the same case or controversy.

## FACTS RELEVANT TO ALL COUNTS

12. WATKINS was hired by DEFENDANT BNSF, in February of 2013 as Mechanical Carman and since October 10, 2015, has operated as a Relief Foreman.

13. As a Relief Foreman WATKINS works in the Chicago Division, known as Chicago Carwith, located at 3545 W. Pershing Rd., in the City of Chicago.

14. WATKINS is a member of the Transportation Communications Union/IAM ("TCU") represents approximately 46,000 members in the U.S., most employed in the railroad industry, and his position may be subject to a Collective Bargaining Agreement. ("CBA")

15. In the position of Relief Foreman, WATKINS earns $32.02 per hour, which equates to approximately $62,000 annually.

16. WATKINS performs his job in a diligent and skillful manner.

17. In his position as Relief Foreman, Watkins has been assigned as many as 15-20 days straight with up to 12 hours shift to work as Relief Foreman.

18. In addition, Watkins has been assigned to train other BNSF workers for the position of Relief Foreman.

19. The Relief Foreman position pays approximately $80,000 annually.

20. In addition, employees in the Relief Foreman position enjoy a schedule where they work 3 days on and then have 3 days off each week.

**Denial of Promotions**

21. Since 2015, Watkins has applied for the position of Mechanical Foreman more than 15 times.

22. Although the normal procedure is to post openings for the position of Mechanical Foreman online, in many instances BNSF employees have been promoted to Mechanical Foreman without the opening ever having been posted online.

23. This process denies Watkins the opportunity to know about open Mechanical Foreman positions in time to apply for same.

24. Watkins first applied for the promotion to Mechanical Foreman on January 13, 2015.

25. Watkins has two years of college at Olive Harvey College, and Devry University, where he completed training as an Electronic Technician, in May of 1995.

26. Watkins has worked for BNSF as a Mechanical Carman since February 2013 and has the following qualifications:

     o Operated as a Relief Foreman since October 2015 to the present;
     o Has Experience in Safety, PPE and Derailment;
     o Has Experience in data entry with Microsoft, Excell and IOS; and
     o Is CPR Certified.

27. Watkins was qualified for the position because the duties of Mechanical Foreman are the same as the duties of Relief Foreman, such that Watkins was already performing the Mechanical Foreman position.

28. Nevertheless, Watkins received a kick back letter saying that BNSF decided to promote a different applicant.

29. The person promoted to the position of Mechanical Foreman did not have the education or experience that Watkins had.

30. The person promoted to the position of Mechanical Foreman was not Black.

31. The decision to promote someone other than Watkins to the position of Mechanical Foreman was made by BNSF and its employees including Mulberry, Haynes, Bartee, and Hosmer.

32. Mulberry, Haynes, Bartee, and Hosmer have final decision-making authority related to promotions at the Chicago Carwith and other locations.

33. The decision to promote someone other than Watkins to the position of Mechanical Foreman was based upon race.

34. Chicago Carwith is not the only BNSF location where BNSF has failed and refused to promote any Black people to the position of Mechanical Foreman.

35. Notwithstanding the fact that Haynes and Bartee are Black, they regularly participate in the discriminatory practices of BNSF related to the refusal to promote Blacks to the position of Mechanical Foreman.

36. Watkins complained to management including Haynes, Bartee, Mulberry and Alyssa Lavorata, Human Resources Director for the Chicago Division, to no avail.

37. Since January 2015, Watkins has applied for a promotion to the position of Mechanical Foreman on several other occasions, including but not limited to the following:

   o January 13, 2015, Mechanical Foreman I Topeka Kansas;
   o January 13, 2015, Mechanical Foreman I Minneapolis MN, (Northtown);
   o December 6, 2016, Mechanical Foreman I Chicago Illinois (Car);
   o February 7, 2017, Mechanical Foreman I, Topeka, Kansas;
   o February 7, 2017, Mechanical Foreman I, Kansas City, KS (Locomotive);
   o February 7, 2017, General Foreman I, Winslow AZ.
   o February 14, 2017, Mechanical Foreman II, Minneapolis, MN Car;
   o October 26, 2017, Mechanical Foreman I Chicago IL. Suburban Services;
   o November 1, 2017, Mechanical Foreman II, Minneapolis, MN Locomotive;
   o November 8, 2017, Mechanical Foreman II, Chicago, IL, Suburban Services;
   o November 17, 2017, Mechanical Foreman I, Chicago, IL. Car;
   o April 24, 2018, Mechanical Foreman I, Chicago, IL. Suburban Services;
   o May 16, 2018, Mechanical Foreman I, Chicago, IL. Car;
   o May 16, 2018, General Foreman II, Chicago, IL. Car
   o November 30, 2018, Mechanical Foreman I, Chicago, IL. Locomotive; and
   o December 27, 2019, Mechanical Foreman I, Chicago, IL. Locomotive.

38. Watkins was qualified for each of the positions he applied for, as set forth above in ¶ 37 above.

39. Nevertheless, Watkins received a kick back letter saying that BNSF decided to promote a different applicant, each time he applied for the promotion.

40. The persons promoted to the position of Mechanical Foreman did not have the education or experience that Watkins had.

41. The persons promoted to the positions of Mechanical Foreman were not Black.

42. The decision to promote someone other than Watkins was made by BNSF and its employees including Mulberry, Haynes, Bartee, and Hosmer.

43. Mulberry, Haynes, Bartee, and Hosmer have final decision-making authority related to promotions at the Chicago locations.

44. As a result of each of the aforementioned applications, Watkins received a kickback letter informing him that BNSF had decided to promote another applicant.

45. In addition, Watkins has 4 years' experience working as an Relief Foreman, which includes the same duties as the Foreman position except for handling payroll.

46. Watkins was qualified for each of the above referenced positions for which he applied.

47. The persons promoted to Foreman were not better qualified and had less experience than Watkins.

48. Watkins has repeatedly complained to Mulberry, Haynes, Bartee as well as other members of management and Human Resources about the denial of promotions, many times to no avail.

49. The decision to promote someone to the positions listed above was the result of discrimination based upon race and or age.

50. There are no Black foreman in the Chicago Division, Aurora, nor the 14th Street Division.

51. Over a period of three months in 2021, Watkins talked with his GM Haynes, and Assistant GM Bartee, about promotions.

52. Watkins was advised that there was no room in the budget and when management was looking for someone for Mechanical Foreman, they would let him know.

53. Shortly thereafter, in a briefing meeting it was announced by the GM Haynes that training needed to start for the Mechanical Foreman positions that were coming open.

7

54. On another occasion, Watkins was informed that the corporate office makes the decisions about who will be promoted.

55. On one occasion a job applicant, Joe Bautista (Mexican) who Watkins was required to train, applied for the Mechanical Foreman position, but missed his interview for the position.

56. Management called Bautista and waited for him to come in for the interview and then promoted Bautista over Watkins.

57. Watkins has more experience and seniority on the job than Bautista.

58. The decision to promote Bautista over Watkins was based upon race age, and in retaliation for Watkins' complaints about discrimination.

**Harassment/Retaliation/Hostile Work Environment**

59. On one occasion while Watkins was in the cafeteria, a Carman asked when Watkins would do Relief Foreman work again because they needed help, to which Watkins did not answer.

60. Phil (last name unknown) answered that Watkins cannot do Relief Foreman work because he is on Level S discipline.

61. When Watkins asked who had told Phil about Watkins' discipline, Phil advised that Ed Ornik, Phil's friend had told him.

62. Watkins was on Level S discipline because of an accident that had occurred on or about October 25, 2018.

63. Watkins reported the incident right away and there was no damage to the truck involved.

64. Nevertheless, Bartee advised Haynes, who was new on the job that Watkins should be brought in for investigation.

8

65. After the investigation Watkins was given Level S 30-day Record Suspension for his vehicle accident on Friday September 14, 2018. In addition, Watkins was assessed a one-year review period commencing on December 6, 2018.

66. Neither Phil nor Ornik should have known about Level S Watkins' discipline, but management discussed it with Watkins' co-workers, in an effort to humiliate and embarrass Watkins in front of his co-workers, and unfairly and negatively affect Watkins' work record so as to justify the failure to promote him to Mechanical Foreman.

67. Watkins was further humiliated and frustrated by constantly being required to train other BNSF employees for the Mechanical Foreman position only to have those employees promoted over Watkins.

68. Hosmer was assigned to the position of Developer/Mentor in the Foreman Development Program in place at BNSF.

69. Hosmer was reckless and repeatedly did things designed to get Watkins in trouble.

70. In addition, Hosmer repeatedly told Watkins that BNSF would never promote him to the position of Mechanical Foreman.

71. Watkins repeatedly reported Hosmer's recklessness to Bartee and asked that he be assigned a different mentor, to no avail.

72. Hosmer's actions interfered and negatively affected Watkins' efforts to get promoted to Mechanical Foreman.

73. Upon information and belief, eventually Hosmer's recklessness placed another Carman in grave danger, and she was forced out of the BNSF's employ.

74. After he made the above complaints, Defendant BNSF repeatedly placed individuals in the seat to be trained for Mechanical Foreman who had just become a journeyman.

75. Watkins has been a journeyman for the past 7 years and is constantly required to train other employees who that get promoted over him.

76. Watkins has lost income and additional benefits as a result of being denied the promotions.

77. This action diminished WATKINS'S compensation and was a material adverse change in the terms and conditions of WATKINS'S employment.

78. In addition, WATKINS was treated differently than similarly situated employees who had not complained.

79. Indeed, other Relief Foreman were promoted to the position of Mechanical Foreman and were not disciplined for minor infractions as was Watkins.

80. Further other similarly situated Relief Foreman were not subjected to the details of their personal employee filed being disseminated by management subjecting them to open ridicule, humiliation and embarrassment by their co-workers.

81. After Watkins complained about the harassment, based upon race and age, Haynes issued disciplinary action to Watkins.

82. Indeed, Haynes issued discipline to Watkins for unwarranted reasons, listed above.

83. More recently Watkins was subjected to discipline for an accident caused by another employee, a Crane Operator (White) who indicated the sun was in his eyes (which should have required him to stop moving the crane), during which Watkins was nearly injured, could have been killed, and for which the work truck Watkins was driving was damaged.

84. Watkins was not at fault, nevertheless Watkins was charged with a rules violation and required to undergo investigation.

85. The White Crane Operator was not required to participate in the Investigation, and upon information and belief, received no discipline because he was allowed to return to work the same day.

86. Watkins required hospitalization via ambulance directly from the job cite, because he was so shaken by the incident, that subjected him to serious injury and/or death.

87. During the hospitalization Watkins was harassed by Bartee who wanted to force Watkins to submit to a drug test.

88. At the time of this filing this Investigation is ongoing.

89. NBSF's retaliated against Watkinis by creating a *for cause* reason to issue the Level S discipline and the Investigation of the accident involving the crane.

90. No other Relief Foreman received the disciplinary investigation and Level 5 Suspensions and write ups for the things for which Haynes issued discipline to Watkins.

91. The disciplinary write-ups and warnings were based upon Watkins' age and race and retaliation for complaining about discrimination.

92. Each time Watkins would complain about harassment, both to management and to HR, Haynes, Bartee, Hosner, and Mulberry would retaliate by either issuing a disciplinary action, giving him additional work duties to perform, requiring Watkins to train a relatively a new hire or deny Watkins the requested promotion.

93. This change in the condition in which Watkins is forced to work subjects Watkins to a humiliating, degrading, unsafe and otherwise significantly negative alteration of his workplace environment.

94. Watkins' race and his age are a factor in the reason for Defendant NBSF's decision not to promote Watkins to the position of Mechanical Foreman.

95. Watkins' race and his age are a factor in/reason for Defendant Haynes' constant disparate treatment, humiliation, and retaliation against Watkins.

96. Watkins was treated differently than those employees outside of his race and younger than him in respect to the terms and conditions of his employment, all based upon his age and his race.

97. Further, Defendants engaged in, and continue to engage in, and expose Plaintiff to unsafe working practices, like the incident involving the crane operation.

98. Haynes' actions changed the conditions in which Watkins worked in a way that subjected Watkins to an unsafe, unhealthful, dangerous, and otherwise negative alternation in his work environment.

99. Watkins reported the actions of Haynes to Defendant's HR office to no avail. Defendant BNSF failed to take any action regarding Watkins' complaints.

100. Watkins filed a Charge of Discrimination and on February 5, 2021, and the EEOC issued a Right to Sue letter to Watkinis, on or about March 30, 2021.

## COUNT I
## VIOLATION OF TITLE VII DISCRIMINATION BASED UPON RACE
## AGAINST CITY OF COLLEGES

101. Plaintiff incorporates by reference all of the allegations set forth in paragraphs 1 through 101 above.

102. Title VII of the Civil Rights Act of 1964 prohibits discrimination in employment practices and specifically 42 U.S.C.A. § 2000e-2 provides in pertinent part:

**"(a) Employer practices**
It shall be an unlawful employment practice for an employer—
**(1)** to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin;"

103. Plaintiff has filed this cause subsequent to a timely filing of a Charge of Discrimination based upon race and age with the Equal Employment Opportunity Commission, and receipt of a Right to Sue Letter ("Letter") a true and correct copy of which is attached to this Complaint as Exhibits "A" and "B".

104. Plaintiff, at all times pertinent to this Complaint, was a resident within the venue and jurisdiction of this judicial district and was within the protected race group (Black) as provided by Title VII.

105. BNSF at all times relevant to this Complaint, operated and did business within the venue and jurisdiction of this judicial circuit.

106. During the course of his employment Watkins came under the supervision of Mulberry, Haynes, Bartee and Hosner who each subjected Watkiins to differential terms and conditions of employment because of his race.

107. Defendant BNSF'S conduct as previously alleged at length herein and as described in the Charge of Discrimination attached to this Complaint constitutes discrimination based upon race in direct violation of Title VII.

108. As a result of Defendant's discriminatory conduct, Plaintiff has been damaged in his career and to his person and has otherwise suffered monetary damages.

109. WHEREFORE, Plaintiff Shandale C. Watkins, demands judgment against the Defendant, BNSF as follows:

A.     For retroactive placement into the position of Foreman, with all back pay, benefits and other emoluments of employment.

B.     For an award of $300,000 in compensatory damages suffered because of the discrimination; Plaintiff's injury to his career, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary damages and fringe benefits;

C.    For attorney's fees and costs of this suit, pursuant to applicable statute; and

D.    For such other and further relief, as is just and equitable.

## COUNT II

## VIOLATION OF THE ADEA

111.    Plaintiff incorporates by reference all of the allegations set forth in paragraphs 1 through 100 above.

112.    Plaintiff brings this action pursuant to the Age Discrimination in Employment Act of 1967. ("ADEA"), 29 U.S.C.A. §§621 et seq.

113. Jurisdiction also arises pursuant to 28 U.S.C.A. §1343(4).

114. Plaintiff has filed this cause subsequent to a timely filing of a Charge of Discrimination based upon age with the Equal Employment Opportunity Commission, a true and correct copy of which is attached to this complaint as Exhibit "A".

115. Plaintiff has filed this cause pursuant to a Right to Sue Letter issued by the Equal Employment Opportunity Commission within the statutory time requirement, a true and correct copy of which is attached to this Complaint as Exhibit "B".

116. Plaintiff, at all times pertinent to this Complaint, was a resident within the venue and jurisdiction of this judicial district and was within the protected age group as provided by the ADEA.

117. The Defendant at all times relevant to this Complaint, operated and did business within the venue and jurisdiction of this judicial circuit.

118. Plaintiff was employed by the Defendant since approximately 2013. At the time of his of the events giving rise to this complaint, WATKINS was 40+ years of age.

14

119. In direct violation of the ADEA, the defendants engaged in the age discriminatory acts described in the Charge of Discrimination, attached to the complaint, and incorporated herein by reference, including but not limited to:

    a. Disciplined Watkins for behavior that did not warrant the discipline.
    b. Disciplined Watkins for behavior that other employees were not disciplined for.
    c. Refused to promote Watkins to the position of Mechanical Foreman.
    d. Admonished, humiliated, and embarrassed Watkins by repeatedly disciplining him including accusing him of wrongdoing in front of his co-workers.
    e. Treated Watkins differently from other similarly situated employees;
    f. Subjected Watkins to scrutiny, discipline, wrongful allegations of misconduct and harassment as part of a conspiracy intended to result in his termination;
    g. Created a hostile work environment by the activities listed above;
    h. Failed and refused to conduct an honest, open and good faith investigation of the charges levied against Watkins by Haynes, Bartee, and Hosner and others.

120. As a result of Defendant's discriminatory conduct, Plaintiff has been damaged in his career and has otherwise suffered monetary damages.

WHEREFORE, Plaintiff WATKINS, demands judgment against the Defendant, BNSF as follows:

A. For damages in an amount equal to all back pay sustained by Plaintiff.

B. For an award of compensatory damages for Plaintiff's injury to his career, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary damages and fringe benefits;

C. For placement into the Mechanical Foreman position, or in the alternative, for front pay, pursuant to Section 7 (e) of the ADEA, 29 U.S.C.A. §626 (b);

D. For Attorney's fees and costs of this suit, pursuant to Section 7(b) of the ADEA, 29 U.S.C.A. §626 (c); and

E. For such other and further relief as is just and equitable.


**COUNT III**
**ADEA – WILLFUL VIOLATION**

121. Plaintiff incorporates by reference all of the allegations set forth in paragraphs 1 through 100 and 111 through 120 above.

122. Defendant's discriminatory conduct was intentional and/or in reckless disregard for Plaintiff's rights under the law and these acts constitute willful indifference to said rights.

123. WHEREFORE, Plaintiff WATKINS, demands judgment against the Defendant, BNSF as follows:

    A.    For damages in an amount equal to Plaintiff's back pay and benefits pursuant to Section 7(b) of the ADEA, 29 U.S.C.A. §626 (b);

    B.    For an award of compensatory damages for Plaintiff's injury to his career, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary damages and fringe benefits;

    C.    For promotion to the position of Mechanical Foreman, or in the alternative, for front pay, pursuant to Section 7 (e) of the ADEA, 29 U.S.C.A. §626 (b);

    D.    For Attorney's fees and costs of this suit, pursuant to Section 7(b) of the ADEA, 29 U.S.C.A. §626 (c);

    E.    For Punitive damages; and

    F.    For such other and further relief as is just and equitable

## COUNT IV
## RETALIATION AGAINST ALL DEFENDANTS

124. Plaintiff realleges and incorporates by reference paragraphs 1 through 100 inclusive.

125. Plaintiff has been threatened, subjected to intimidating and derogatory statements, forced to work in unsafe environment and to perform dangerous activities without proper equipment, demeaned and humiliated in front of his peers, subjected to unfair and excessive discipline, denied promotions, all in retaliation for opposing and making charges of harassment and failure to promote, all based upon race against Defendant BNSF, Mulberry, Haynes, Bartee and Hosnoer, which conduct Plaintiff reasonably believed to be an unlawful employment practice under Title VII in violation of 42 U.S.C. § 2000e-3(a).

126. As alleged above, these actions began occurring shortly after he began his employment, when Plaintiff filed a complaint with the BNSF management and HR Department and continues to date.

127. A reasonable person in Plaintiff's position would find the Defendants' actions materially adverse.

128. Defendants acted willfully and in bad faith.

129. WHEREFORE, Plaintiff demands judgment against Defendant BNSF for compensatory, prejudgment interest, attorneys' fees, costs, and such other and further relief as the court deems proper.

<u>**COUNT II**</u>
<u>**VIOLATION OF 42 USC § 1981 – AGAINST BNSF, MULBERRY, HAYNES,**</u>
<u>**BARTEE AND HOSNER**</u>

130. Plaintiff incorporates by reference all of the allegations set forth in paragraphs 1 through 100.

131. The claims against the Defendants herein are based upon discrimination based upon race.

132. Jurisdiction arises pursuant to 28 U.S.C. § 1343.

133. Venue is appropriate as WATKINS' residence, and Defendants' residences and businesses, as well as all events giving rise to this claim occurred within the counties served by this Court.

134. Title 42 U.S.C. § 1981 provides in pertinent part:

"(a) Statement of equal rights

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and

17

property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b) "Make and enforce contracts" defined
For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

(c) Protection against impairment
The rights protected by this section are protected against impairment by nongovernmental discrimination …"

130. At all times herein mentioned, Watkins was a person protected by the provisions of 42 U.S.C. § 1981.

131. BNSF deprived Watkins of his rights to make and enforce contracts granted to him by statutes of the United States when they deliberately and intentionally discriminated against him based upon his race by setting in place a campaign designed to, and did, result in Watkins' harm.

132. Defendant BNSF maintains a widespread practice of treating Black employees, (based upon their race) especially Watkins less favorably than his co-workers who are not Black.

133. Although the practice is not authorized by written law or express company policy, the practice of discrimination in the nature of disparate treatment, denial of promotion, and the creation of a hostile work environment is so permanent and well-settled as to constitute a custom and/or usage with the force of law.

134. Defendants BNSF practices represent a widespread practice of racial discrimination, especially towards Blacks.

18

135. Watkins was treated less favorably than his colleagues because he is Black, caused by an existing, unwritten, unconstitutional policy, which is directly attributable to a final policymaker.

136. The final policy makers for Defendant BNSF include Mulberry, Haynes, Bartee and Hosner, and other members of management, including those in HR.

137. Watkins alleges a pattern of conduct that gives rise to a plausible claim that an unconstitutional custom, pattern or practice exists. Specifically Blacks who occupy the position of Relief Foreman are treated differently and denied the same opportunities as their Caucasian counterparts because of discriminatory animus and intent.

138. This supports Watkins' claim of having suffered adverse employment actions by conduct tantamount to bullying, arbitrary and inconsistent directives, demeaning and humiliating assignments, intentional and public humiliation, unwarranted discipline, and denial of promotions.

139. Watkins has been employed by BNSF since February of 2013 when he entered into an agreement for employment as a Carman.

140. Plaintiff at all times material to this Complaint proved his industriousness, presented and represented himself in an orderly and respectful manner and commanded and continues to command the respect of his fellow employers.

141. Additionally, Watkins demonstrated his capacity and abilities to perform all job tasks to which he was assigned.

142. Rather than support Watkins in his position of *Relief Foreman*, Defendant BNSF intentionally discriminated against Watkins in the following ways: by refusing to promote him:

- o January 13, 2015, to Mechanical Foreman I Topeka Kansas;
- o January 13, 2015, to Mechanical Foreman I Minneapolis MN, (Northtown);
- o December 6, 2016, to Mechanical Foreman I Chicago Illinois (Car);
- o February 7, 2017, to Mechanical Foreman I, Topeka, Kansas;
- o February 7, 2017, to Mechanical Foreman I, Kansas City, KS (Locomotive);
- o February 7, 2017, to General Foreman I, Winslow AZ.
- o February 14, 2017, to Mechanical Foreman II, Minneapolis, MN Car;
- o October 26, 2017, to Mechanical Foreman I Chicago IL. Suburban Services;
- o November 1, 2017, to Mechanical Foreman II, Minneapolis, MN Locomotive;
- o November 8, 2017, to Mechanical Foreman II, Chicago, IL, Suburban Services;
- o November 17, 2017, to Mechanical Foreman I, Chicago, IL. Car;
- o April 24, 2018, to Mechanical Foreman I, Chicago, IL. Suburban Services;
- o May 16, 2018, to Mechanical Foreman I, Chicago, IL. Car;
- o May 16, 2018, to General Foreman II, Chicago, IL. Car;
- o November 30, 2018, to Mechanical Foreman I, Chicago, IL. Locomotive; and
- o December 27, 2019, to Mechanical Foreman I, Chicago, IL. Locomotive.

143. Defendants further discriminated against Watkins by denying him payment at the higher rate for Mechanical Foreman for each of the promotions applied to and denied above; by insisting he repeatedly train new employees or employees with less experience and qualifications for the position of Relief Foreman and then promoting them instead of Watkins; by subjecting him to underserved discipline for minimal infractions; by subjecting him to investigation and threatened discipline for incidents that were the fault of others; and by retaliating against him for complaining about discrimination against him while working at BNSF.

144. BNSF's intentional discriminatory animus through the actions of its employees Mulberry, Haynes, Bartee and Hosner, and other employees in management all based upon race.

145. BNSF knew about or reasonably should have known about the hostile work environment created by Mulberry, Haynes, Bartee and Hosner, and other management employees, including Lavorata in HR and failed to take appropriate remedial action to protect Watkins.

20

146. Mulberry, Haynes, Bartee and Hosner, and other members of management, including Lavorata in HR, intentional discrimination interfered with Watkins' right to enforce his agreement with BNSF including the performance, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

147. As a result of the Defendant BNSF'S, discrimination based upon race, Watkins has suffered injury to his career, as well as emotional pain and suffering, inconvenience, mental anguish and loss of enjoyment of life, and other losses for which he is entitled to compensatory damages in accordance with 42 U.S.C. § 1981.

WHEREFORE, Plaintiff Watkins demands judgment against the Defendant BNSF, as follows:

A.   Actual damages in the amount of lost wages and back pay from 2015 to present, including any differential in pay as a result of the failure to promote;

B.   Compensation for loss of employee benefits, including medical, dental, life, 401K, pension, stock options and retirement benefits;

C.   Additional compensatory damages for Plaintiff's mental anguish, pain, and suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary damages and fringe benefits;

D.   Additional compensation for damages to and the loss of Watkins' career;

E.   For punitive damages;

F.   All reasonable and necessary attorney's fees incurred as specified;

G.   All costs of court; and

I;   Such other and further relief as this court deems just and proper.

21

## **COUNT III**

## **RETALIATION AGAINST BNSF**

148. Plaintiff realleges and incorporates by reference paragraphs 1 through 100 inclusive.

149. Plaintiff has been threatened, subjected to racial and intimidating and derogatory statements, denied opportunities to complete his work, subjected to intense scrutiny in the performance of his job; demeaned and disciplined and humiliated in front of his peers, in retaliation for opposing and making charges regarding conduct Plaintiff reasonably believed to be an unlawful employment practice under Title VII in violation of 42 U.S.C. § 2000e-3(a).

150. To date, Plaintiff continues to be harassed and retaliated against by his supervisors Mulberry, Haynes, Bartee who continue to single Plaintiff out for mistreatment.

151. A reasonable person in Plaintiff's position would find the Defendants' actions materially adverse.

152. Defendant acted willfully and in bad faith.

WHEREFORE, Plaintiff demands judgment against Defendant BNSF for denial promotion, damages in the nature of lost income compensatory, prejudgment interest, attorneys' fees, costs, and such other and further relief as the court deems proper.

Respectfully submitted,

SHANDALE C. WATKINS

By      s/ Calvita J. Frederick
        Attorney for Plaintiff

Calvita J. Frederick
Post Office Box 802976
Chicago, Illinois 60680-2976
312-421-5544
ARDC # 6184001
Calvita.frederick@att.net

22