**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **SHANDALE C. WATKINS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **BNSF RAILWAY CO., a Delaware corporation,** | ) | |
| **BRANDON MULBERRY, individually and in** | ) | **No. 21 C 3547** |
| **his official capacity as Chief Mechanical** | ) | |
| **Officer of Chicago Div., MICHAEL HAYNES,** | ) | |
| **individually and in his official capacity as GM,** | ) | **Judge Rebecca R. Pallmeyer** |
| **KEVIN BARTEE, individually and in his** | ) | |
| **official capacity as Asst. GM, ANNA** | ) | |
| **HOSMER, individually and in her official** | ) | |
| **capacity as Developer, and RAYMOND** | ) | |
| **KLOBERDANZ,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Shandale C. Watkins alleges that his employer, BNSF Railway Co., and five current or former BNSF employees discriminated against him on the bases of race and age in a variety of ways. BNSF and two individual Defendants have moved to dismiss the claims against them. For the reasons explained here, their motion [19] is granted in part and denied in part.

## BACKGROUND

At this stage, the court accepts all factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021).

### I. Parties

Defendant BNSF Railway Co. is a freight railroad company that provides railway services nationally, including in the Chicago area. (First Amended Complaint [16] (hereinafter "FAC") ¶ 2.) Plaintiff Watkins is a Black male who has worked for Defendant BNSF since 2013.[1] (*Id.* ¶¶ 1, 13,

---

[1] In his EEOC charge, Watkins asserts he was 45 years old as of February 2021. (Charge of Discrimination, Ex. A to FAC [16-1].) The First Amended Complaint alleges that Watkins was "+40 years of age" at the time of the events alleged (FAC ¶ 128), but makes no

116.)  Watkins works in BNSF's Chicago Division at a facility known as "Chicago Corwith."  (*Id.* ¶ 14.)  Defendant Michael Haynes, a Black male, was at all relevant times the General Manager at Chicago Corwith, and Defendant Kevin Bartee, a Black male, was the Assistant General Manager at Chicago Corwith.  (*Id.* ¶¶ 4–5.)  Both Haynes and Bartee had hiring and decision-making authority for promotions and discipline. (*Id.*)  The court refers to BNSF, Haynes, and Bartee (i.e., the Movants) together as "Defendants."

Watkins has named three additional Defendants in the FAC, but has provided no proof of service for these individuals (even for the initial complaint), and none of them has appeared in the case.  (*See* Def.'s Mot. [20] at 1 n.1.)  Those additional Defendants include Brandon Mulberry, a white male, who was a Chief Mechanical Officer in the Chicago Division and who had hiring and decision-making authority for promotions and discipline; Anna Hosmer, a female alleged to be "Asian/Latino," who was the "Developer" assigned to Watkins at Chicago Corwith and who had input in decisions related to promotions and discipline; and Raymond Kloberdanz, a white male employee of BNSF.  (FAC ¶¶ 3, 6–7, 9.)

## II.    Discrimination in Promotions

BNSF hired Watkins in February 2013 as a "Mechanical Carman."  (FAC ¶ 13.)  Although Watkins apparently still holds that position on paper, he alleges that he has effectively been working as a "Relief Foreman" since around October 2015.  (*Id.*)  Compared to BNSF's other Relief Foremen, Watkins says that he has been compensated with less money and given less favorable working schedules.  (*Id.* ¶¶ 16–21.)

Between 2015 and 2019, Watkins repeatedly but unsuccessfully sought a promotion to "Mechanical Foreman," a position for which he believes he is qualified based on, among other things, his educational background and his experience working as a de facto Relief Foreman.  (*Id.* ¶¶ 22, 25–28, 38.)  Watkins says he has applied for the Mechanical Foreman position more than

mention of Bartee's or Haynes's ages.  Defendants assert in their brief that Watkins is 45 years old, Haynes 35 years old, and Bartee 51 years old.  (Def.'s Mot [20] at 1.)

15 times, and he implies he would have submitted still more applications were it not for the fact that, contrary to an established BNSF practice of posting job openings online, BNSF promoted several individuals to the Mechanical Foreman slot without posting the positions first. (*Id.* ¶¶ 22–24.) Watkins alleges that non-Black applicants with less experience than he had were selected for these positions. (*Id.* ¶¶ 29–31, 40–42, 48.) One such applicant, who Watkins himself had previously trained, was promoted to Mechanical Foreman despite missing his initial job interview.[2] (*Id.* ¶¶ 56–58.)

Watkins repeatedly complained to BNSF management about being passed over for promotion. (*Id.* ¶¶ 37, 49.) In 2021, he talked with both Defendant Haynes and Defendant Bartee about promotion opportunities. (*Id.* ¶ 52.) They advised him that there was currently no room in the budget but that, if a Mechanical Foreman position opened up, they would let him know. (*Id.* ¶ 53.) Soon thereafter, Defendant Haynes announced at a meeting that some Mechanical Foreman positions would soon be opening up.[3] (*Id.* ¶ 54.)

III. **Hostile Work Environment and Retaliation**

Watkins makes various allegations about harassment, unfair treatment, and retaliation he has experienced on the job. (*See* FAC ¶¶ 60–112.)

In September 2018, Watkins was involved in some kind of accident involving a truck—he offers no details—but there was no damage to the truck, and he reported the incident right away. (*Id.* ¶¶ 63–66.) Defendants Bartee and Haynes initiated an investigation, and Watkins was given a "Level S 30-day Record Suspension." (*Id.* ¶¶ 65–66.) He was also "assessed a one-year review period." (*Id.* ¶ 66.) Sometime later, during a conversation in the cafeteria, one of Watkins's co-

---

[2]    Defendants assert in their brief that this other applicant, Joe Bautista, is 42 years old (Def.'s Mot. at 2), but that fact is not alleged in the FAC.

[3]    It is unclear whether Watkins intends by this allegation to suggest that Defendants Haynes and Bartee somehow misled him. As the court reads these facts, Defendants remained true to their word by informing Watkins (and others) when job openings existed.

workers, Phil, mentioned that Watkins was still subject to his Level S discipline. (*Id.* ¶¶ 60–61.) Phil reported that he had learned this information from yet another coworker, Ed. (*Id.* ¶ 62.) Neither of these individuals should have known about his discipline, according to Watkins, and Watkins believes that BNSF "management discussed it with Watkins' co-workers, in an effort to humiliate and embarrass Watkins in front of his co-workers, and unfairly and negatively affect Watkins' work record so as to justify the failure to promote him to Mechanical Foreman." (*Id.* ¶ 67.)

Watkins also makes allegations related to Defendant Hosmer, who served as a "Developer/Mentor" in the "Foreman Development Program." (*Id.* ¶¶ 69–74.) Watkins alleges, without specifics, that Hosmer "was reckless and repeatedly did things designed to get Watkins in trouble." (*Id.* ¶ 70.) According to Watkins, Hosmer told him that he would never be promoted to Mechanical Foreman, a statement he believes was based on his race. (*Id.* ¶ 71.) And he says, again without specifics, that Hosmer's (unidentified) actions interfered with his "efforts to get promoted to Mechanical Foreman." (*Id.* ¶ 73.) Watkins alleges that he repeatedly "reported Hosmer's recklessness" to Defendant Bartee, who rejected his requests for a different mentor.[4] (*Id.* ¶ 72.)

Watkins has not identified the dates of his complaints regarding Hosmer, but he suggests that BNSF retaliated against him for those complaints. Specifically, he says that Defendant BNSF repeatedly began training novice journeymen for the Mechanical Foreman position even though Watkins himself had been a journeyman for several years and had not yet been promoted. (*Id.* ¶¶ 75–76.) Relatedly, Watkins says he frequently had to train employees who were eventually promoted over him, a situation that he found humiliating and frustrating. (*Id.* ¶¶ 68, 76.)

On one "[m]ore recent[]" occasion, Watkins describes another incident in which he was disciplined for an accident caused by another employee. (*Id.* ¶¶ 84–92.) Again with few details,

---

[4]     Watkins also alleges that "eventually Defendant Hosmer's recklessness placed another Carman in grave danger, and Hosmer was forced out of the BNSF's employ." (FAC ¶ 74.)

Watkins says that a white male crane operator caused an accident when the sun was in the operator's eyes, and the operator should have stopped the crane operation for this reason.  (*Id.* ¶ 84.)  As a result of this incident, Watkins was nearly injured, his truck was damaged, and he was taken to a hospital because he was so shaken.  (*Id.* ¶¶ 84, 87.)  While Watkins was hospitalized, Defendant Bartee "harassed" him by requesting that he take a drug test. (*Id.* ¶ 88.) Watkins was eventually "charged with a rules violation and required to undergo investigation," but the crane operator was not subject to investigation or discipline.  (*Id.* ¶¶ 85–86.)

Watkins claims that this differential treatment, and other discipline that he received, either was based on his age and race or was intended as retaliation for his previous complaints about discrimination.  (*Id.* ¶¶ 90–92.)  More broadly, Watkins says that his complaints about harassment were met with retaliation in many forms, such as disciplinary actions, additional work assignments, and the requirement that he train new hires.  (*Id.* ¶ 93.)

The final specific incident cited in the FAC involved Defendant Kloberdanz.  Watkins alleges that in July 2021, while he was in his work vehicle, Defendant Kloberdanz intentionally sprayed him in the face with "an unknown liquid substance" from a fire extinguisher.  (*Id.* ¶¶ 102, 107.)  Watkins reported the incident to BNSF management and filed a police report, but he says that the BNSF officer who investigated the incident attempted to persuade him not to press charges against Kloberdanz.  (*Id.* ¶¶ 103, 105.)  Kloberdanz has been allowed to continue working, even while criminal charges are pending in the Circuit Court of Cook County.  (*Id.* ¶¶ 104, 107, 109.)  Watkins says that he is "frustrated, upset and embarrassed" by the fact that "each day he comes to work he hears Kloberdanz laughing with other co-workers like this incident never happened."  (*Id.* ¶¶ 108–09.)  Watkins has been seeking therapy and other medical treatment as a result of this incident.  (*Id.* ¶ 109.)

## PROCEDURAL HISTORY

Watkins filed an EEOC charge on February 2, 2021, alleging race-based discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), and

5

age-based discrimination in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 *et seq.* ("ADEA"). (*See* Charge of Discrimination, Ex. A to FAC [16-1].) He alleged in his EEOC charge that he had been "subjected to denial of promotions, harassment, disparate treatment, and a hostile work environment" based on his race and age, and that he had been retaliated against for engaging in protected activity. (*Id.*) The EEOC closed Watkins's case on March 30, 2021 (*see* Notice of Right to Sue, Ex. B to FAC [16-2]), and he filed this lawsuit on July 1, 2021 (*see* Compl. [1]).

In the operative First Amended Complaint [16], Watkins asserts claims for race-based discrimination by BNSF in violation of Title VII (Count I); age-based discrimination by BNSF in violation of the ADEA (Count II); willful violation of the ADEA by BNSF (Count III); retaliation by all Defendants in violation of Title VII (Count IV); race-based discrimination, including retaliation, by all Defendants in violation of 42 U.S.C. § 1981 (Count V [II]); retaliation by BNSF in violation of Title VII (Count VI [III]); assault and battery by Defendant Kloberdanz (Count VII [IV]); and negligent supervision by BNSF (Count VIII [VI]).[5]

## **LEGAL STANDARD**

A complaint must include a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A motion to dismiss under Rule 12(b)(6) "challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6); *Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 825 (7th Cir. 2015). While "detailed factual allegations are unnecessary, the complaint must have 'enough facts to state a claim to relief that is plausible on its face.'" *Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*,

---

[5] The court has numbered the counts of the FAC in their correct, sequential order, but it uses brackets to identify the erroneous numbers with which Watkins labeled some claims.

556 U.S. 662, 678 (2009).  That task is "context-specific" and "requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.  In deciding a motion to dismiss, the court accepts all factual allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiff.  *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021).

## DISCUSSION

Title VII prohibits an employer from discriminating against an employee on the basis of race, color, religion, sex, or national origin.  42 U.S.C. § 2000e-2(a)(1) (prohibiting discrimination "with respect to [an employee's] compensation, terms, conditions, or privileges of employment"). The ADEA prohibits an employer from discriminating against an employee on the basis of age. 29 U.S.C. § 623(a)(1) (prohibiting discrimination in the same forms); *id.* § 631(a) (limiting the ADEA's protection to individuals at least 40 years of age).

Both Title VII and the ADEA also "prohibit employers from retaliating against their employees because an employee complained of discrimination" outlawed by the respective statute.  *Lewis v. Ind. Wesleyan Univ.*, 36 F.4th 755, 761 (7th Cir. 2022); *see also* 42 U.S.C. § 2000e-3(a) (Title VII); 29 U.S.C. § 623(d) (ADEA).  And while these statutes do not expressly mention hostile work environments as a form of discrimination, courts have recognized actionable discrimination where a workplace is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Brooks v. Avancez*, 39 F.4th 424, 441 (7th Cir. 2022) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78 (1998)).[6]

To succeed on a discrimination claim under Title VII or the ADEA, a plaintiff must prove "(1) that she is a member of a protected class, (2) that she suffered an adverse employment action, and (3) causation."  *Lewis*, 36 F.4th at 759 (citing *Abrego v. Wilkie*, 907 F.3d 1004, 1012

---

[6]  Hostile work environment claims originated in the Title VII context, and the Seventh Circuit has "assumed, without deciding," that they may also be brought under the ADEA.  *See Brooks*, 39 F.4th at 441.

(7th Cir. 2018)). To succeed on a retaliation claim under Title VII or the ADEA, a plaintiff must prove that "(1) she engaged in protected activity, (2) she suffered an adverse employment action, and (3) causation." *Id.* at 761 (citing *Rozumalski v. W.F. Baird & Assocs., Ltd.*, 937 F.3d 919, 924 (7th Cir. 2019); and *Boston v. U.S. Steel Corp.*, 816 F.3d 455, 464 (7th Cir. 2016)). For a hostile work environment theory, a plaintiff must prove that "(1) the work environment was both objectively and subjectively offensive; (2) the harassment was based on membership in a protected class or in retaliation for protected behavior; (3) the conduct was severe or pervasive; and (4) there is a basis for employer liability." *Boss v. Castro*, 816 F.3d 910, 920 (7th Cir. 2016) (citing *Nichols v. Mich. City Plant Plan. Dep't*, 755 F.3d 594, 600 (7th Cir. 2014)).

The third statute under which Watkins seeks relief is 42 U.S.C. § 1981. Section 1981 guarantees "the right to be free of racial discrimination in the making and enforcing of contracts," including those for employment. *Morgan v. SVT, LLC*, 724 F.3d 990, 995 (7th Cir. 2013). "[T]he methods of proof and elements of [a § 1981] case are essentially identical" to those in a Title VII or ADEA case. *McGowan v. Deere & Co.*, 581 F.3d 575, 579 (7th Cir. 2009); *see also Lewis*, 36 F.4th at 759 (noting only minor differences in the statutes' causation standards). Section 1981, like Title VII or the ADEA, prohibits an employer from retaliating against an employee for engaging in protected activity, *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 445 (2008), and allows an employee to pursue a discrimination claim on a hostile work environment theory, *see, e.g.*, *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 544 (7th Cir. 2011).

I.      **Timeliness**

Defendants argue, first, that some portion of Watkins's Title VII, ADEA, and § 1981 claims are time barred. (Def.'s Mot. at 4–5; Def.'s Reply at 10–12.)

A.      **Title VII and ADEA**

In Illinois, a plaintiff asserting Title VII and ADEA claims must first file an administrative charge with the EEOC within 300 days of the alleged unlawful employment practice. *Chatman v. Bd. of Educ.*, 5 F.4th 738, 744 (7th Cir. 2021); *see also* 42 U.S.C. § 2000e-5(e)(1) (Title VII); 29

8

U.S.C. § 626(d)(1)(B) (ADEA). "The EEOC then gives the plaintiff notice of her right to sue, at which point the plaintiff has 90 days to file her lawsuit." *Taylor v. Nw. Mem'l Hosp.*, 521 F. Supp. 3d 714, 715 (N.D. Ill. 2021); *see also* 42 U.S.C. § 2000e-5(f)(1); 29 U.S.C. § 626(e).

Watkins filed his administrative charge on February 2, 2021. (See Charge of Discrimination, Ex. A to FAC [16-1].) Defendants urge the court to dismiss his "failure to promote claims and his other claims based on discrimination, retaliation and purported harassment that pre-date April 8, 2020," which is 300 days earlier. (Def.'s Mot. at 5.)

Watkins's response is unhelpful. First, he says that "he timely filed this civil action after receiving the EEOC notice." (Pl.'s Resp. at 3.) True—but Defendants are not challenging the timeliness of the complaint based on the *90*-day limitations period that applies between the EEOC's notice and the plaintiff's lawsuit. (*See* Def.'s Reply at 4 n.1.) They contend, rather, that some of Watkins's allegations are untimely based on the *300*-day limitations period that applies between the unlawful employment practice and the EEOC charge. (*Id.*)

Second, Watkins argues that the 300-day limitations period "does not apply to Plaintiff's hostile work environment claim" (Pl.'s Resp. at 2), but this is incorrect. Every Title VII and ADEA claim, including those alleging hostile work environments, is subject to the 300-day filing deadline. *See* 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d)(1)(B). The question here is when that limitations period begins to run for Watkins's claims, which depends on the type of claim he is asserting. "Discrete acts" of discrimination or retaliation, such as "termination, failure to promote, denial of transfer, or refusal to hire," *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113–14 (2002), are "deemed to have been taken on the date they occurred, even if they form part of an ongoing practice or are connected with other acts," *Beamon v. Marshall & Ilsley Tr. Co.*, 411 F.3d 854, 860 (7th Cir. 2005). Thus, each discrete act "starts a new clock for filing charges alleging that act," and acts that fall before the 300-day window preceding the EEOC charge are not actionable. *See id.* (quoting *Morgan*, 536 U.S. at 113); *see also Adams v. City of Indianapolis*, 742 F.3d 720, 730 (7th Cir. 2014) (noting that a plaintiff "seeking redress for a series of discrete

discriminatory acts cannot avoid the effect of the [300-day] limitations period by arguing that the discrete acts are 'plausibly or sufficiently related'" (citing *Morgan*, 536 U.S. at 111–14)).

On the other hand are claims alleging a hostile work environment. By nature, "[a] hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" *Morgan*, 536 U.S. at 117 (quoting 42 U.S.C. § 2000e-5(e)(1)). For that reason, the court may consider "the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, . . . so long as [at least one] act contributing to that hostile environment takes place within the statutory time period.'" *Dandy v. United Parcel Serv., Inc.*, 388 F.3d 263, 270 (7th Cir. 2004) (quoting *Morgan*, 536 U.S. at 105); *see also Morgan*, 536 U.S. at 122.

Here, Watkins has alleged numerous discrete acts of discrimination and retaliation, and a number of those acts occurred before April 8, 2020. (*See, e.g.*, FAC ¶ 38 (alleging a series of discriminatory failures to promote between October 26, 2017, and December 27, 2019).) As the Seventh Circuit has explained, an alleged failure to promote based on race, age, or retaliatory motive "fall[s] squarely within the Supreme Court's list of 'discrete acts.'" *Adams*, 742 F.3d at 730 (quoting *Morgan*, 536 U.S. at 114). To the extent that Watkins intended for any of these failure-to-promote allegations to support his Title VII and ADEA discrimination claims, they are untimely.

Watkins has alleged other discrete acts, including, for example, "disciplinary write-ups and warnings . . . based upon Watkins' age and race and retaliation for complaining about discrimination." (FAC ¶ 92.) In order for his claims regarding those incidents to be timely, they would have to have occurred after April 8, 2020, but Watkins's factual allegations are too sparse for the court to make a timeliness determination at this stage. The court will expect some amplification of these allegations, should Watkins choose to file an amended complaint.

### B. Section 1981

A plaintiff asserting claims under 28 U.S.C. § 1981 must file suit within four years of the alleged discriminatory action. *Dandy*, 388 F.3d at 269. Watkins filed this suit on July 1, 2021

(*see* Compl. [1]), so with respect to § 1981, Defendants urge the court to dismiss Watkins's "failure to promote claims and his other claims based on discrimination, retaliation and purported harassment . . . that pre-date July 1, 2017." (Def.'s Mot. at 5.)

Defendants identify no allegations of discrete acts that predate July 2017, and the court has found none. For instance, the failure-to-promote allegations that the court found untimely for purposes of Watkins's Title VII and ADEA claims extend back only to October 2017 (*see* FAC ¶¶ 38, 157), comfortably within the four-year period that applies under § 1981. The court thus rejects Defendants' timeliness challenge with respect to Watkins's § 1981 claims.

## II.    Discrimination Claims (Failure to Promote)

As discussed above, Watkins's failure-to-promote allegations are untimely for purposes of his Title VII and ADEA claims (Counts I, II, and III), but they are timely with respect to his § 1981 claim (Count V [II]). Defendants contend that even to the extent the allegations are timely, Watkins has failed to state a § 1981 claim for discrimination on a failure-to-promote theory. (Def.'s Mot. at 6–7; Def.'s Reply at 4.)

To succeed on a race-discrimination claim under § 1981, a plaintiff must prove "(1) that she is a member of a protected class, (2) that she suffered an adverse employment action, and (3) causation." *Lewis*, 36 F.4th at 759 (citing *Abrego*, 907 F.3d at 1012). Defendants contend that Watkins has not plausibly pleaded causation. (Def.'s Mot. at 6–7; Def.'s Reply at 4.) As mentioned above, Watkins alleges that he has applied for the Mechanical Foreman position more than 15 times (FAC ¶ 22), and he provides nine specific dates on which Defendant BNSF allegedly refused to promote him based on his race (*id.* ¶ 157).[7] Defendants point out correctly that Watkins identifies only one specific employee (Joe Bautista, who is allegedly Mexican) that BNSF promoted over Watkins. (Def.'s Mot. at 6–7; *see also* FAC ¶¶ 56–59.) Beyond that information,

---

[7]    On eight of these dates, Watkins was allegedly rejected for a Mechanical Foreman position; on the ninth, he had applied for a "General Foreman" position. (FAC ¶ 157.)

Defendants say, Watkins fails to "provide any information with respect to the decisionmakers responsible for filling any of the 15 positions, or any information about the age, race or qualifications of any of the candidates BNSF selected over Watkins." (Def.'s Mot. at 7.) Nor has Watkins specifically alleged that Defendants Haynes and Bartee "even worked for BNSF at that time or had hiring authority at the time of each of Watkins' applications." (*Id.*; *see also* Def.'s Reply at 4.)

Watkins has not responded to this argument even in passing. (*See generally* Pl.'s Resp.) That was not a wise choice. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) (noting that a court may dismiss a case with prejudice, at the pleading stage, where a plaintiff "effectively abandons the litigation by not responding to alleged deficiencies in a motion to dismiss"); *Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir. 1999) ("Our system of justice is adversarial, and our judges are busy people. If they are given plausible reasons for dismissing a complaint, they are not going to do the plaintiff's research and try to discover whether there might be something to say against the defendants' reasoning."). The court nevertheless declines to dismiss this aspect of the complaint. In addition to identifying the dates on which he applied for open jobs,[8] Watkins has identified the specific titles and locations of the positions (e.g., "Mechanical Foreman II, Chicago, IL, Suburban Services"). Indeed, the failure-to-promote allegations represent the most specific and coherent part of Watkins's entire complaint. (*See* FAC ¶¶ 22–59.) The court expects that he can or will identify less-qualified non-Black candidates who received the desired promotions in discovery. Watkins may therefore proceed on his § 1981 claim to the extent it alleges discriminatory failures to promote him.

---

[8] The court notes the possibility that the dates in the FAC could indicate when Watkins's applications were denied rather than when he applied. The complaint is ambiguous.

### III.     Hostile Work Environment Claims

Next, Defendants contend that Watkins has failed to state a claim for a hostile work environment based on his race or age.  (Def.'s Mot. at 7–10; Def.'s Reply 12–14.)[9]

A hostile work environment claim requires a plaintiff to prove that "(1) the work environment was both objectively and subjectively offensive; (2) the harassment was based on membership in a protected class or in retaliation for protected behavior; (3) the conduct was severe or pervasive; and (4) there is a basis for employer liability."  *Boss*, 816 F.3d at 920.  "To rise to the level of a hostile work environment, conduct must be sufficiently severe or persuasive to alter the conditions of employment such that it creates an *abusive* relationship."  *Huri v. Off. of the Chief Judge of the Cir. Ct. of Cook Cnty.*, 804 F.3d 826, 834 (7th Cir. 2015).

Defendants argue that Watkins has fallen short in pleading causation and severity: "[E]ven when taken as true and viewed in their entirety, Watkins' allegations describing purportedly harassing conduct have nothing to do with his age or his race and do not rise to the level of severity or pervasiveness to state a claim for a hostile work environment in violation of Title VII, the ADEA, or § 1981."  (Def.'s Reply at 13; *see also* Def.'s Mot. at 8 (contending that Watkins has offered only "conclusory and speculative allegations that the conduct was based on race and age"); *id.* at 10 (contending that Watkins's allegations "in no way describe the requisite physically threatening or openly racist workplace or a workplace that is permeated with offensive and demeaning conduct over a significant period of time" (citations and quotations omitted).)  In summary, Defendants argue that the allegations are "simply too scant and conclusory to support a hostile work environment claim."  (Def.'s Mot. at 10.)

The court agrees.  Watkins contends that his hostile work environment claims are supported by allegations that he was subject to (1) "excessive and repeated" disciplinary actions either for his own minor infractions or for more serious mistakes by coworkers; (2) the unwanted

---

[9]     Both sides generally refer to hostile work environment claims simply as "harassment" claims.

disclosure of such disciplinary actions to coworkers; (3) the repeated, reckless conduct of Watkins's mentor, Anna Hosmer, which threatened Watkins's safety and harmed his work performance; (4) a lack of promotion over seven years despite Watkins's training of other employees; and (5) the mishandling of a criminal assault on Watkins by one of his coworkers, Raymond Kloberdanz. (Pl.'s Resp. at 4 (citing FAC ¶¶ 60–112).) He contends, further, that (1) he sufficiently pleaded causation by "consistently stat[ing] that his race and age" were the basis of his harassing treatment, and (2) Defendants' allegedly harassing conduct is sufficiently "severe and pervasive" because it has been "ongoing for many years" and threatens Watkins's "health and safety." (Pl.'s Resp. at 5.) More generally, Watkins argues that Defendants are inappropriately imposing a summary judgment standard on this motion to dismiss, which merely requires allegations that are "plausible on their face." (*Id.* at 4.)

Watkins is correct that many of the cases cited by Defendants were decided on summary judgment, not under Rule 12(b)(6). (*See* Def.'s Mot. at 8–10 (citing, for example, *Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 345 (7th Cir. 1999); *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 982 (7th Cir. 2014); *Saxton v. Am. Tel. & Tel. Co.*, 10 F.3d 526, 533, 537 (7th Cir. 1993); and *Hoosier v. Greenwood Hosp. Mgmt. LLC*, 32 F. Supp. 3d 966, 979–80 (N.D. Ill. 2014)).) As the Seventh Circuit has emphasized in the Title VII context, pleading standards are obviously "different from the evidentiary burden a plaintiff must subsequently meet" on summary judgment or at trial. *Huri*, 804 F.3d at 834 (reversing district court's dismissal of complaint where "Defendants have fair notice of [the plaintiff's] claims and the grounds upon which those claims rest, and the details in her Second Amended Complaint[,] present a story that 'holds together'").

That said, here the FAC fails to satisfy even this lower standard of plausibility. Watkins attempts to sketch a picture of a work environment at BNSF in which he has been subject to severe and pervasive race- and age-based discrimination, but his allegations are too vague, disparate, and conclusory to make the story "hold together." For instance, Watkins does not even allege that the discipline he received for his truck accident was overly punitive—much less provide

14

an explanation of how that was so. Nor does his theory about the intentional disclosure of that discipline contain even the barest details supporting an inference that any BNSF manager disclosed the information to humiliate Watkins (either out of race- or age-based animus or for any other reason). Watkins does not, for example, even allege that employee discipline is typically kept secret as a matter of BNSF policy or practice. As for Defendant Hosmer, Watkins's allegations relate mostly to her purportedly "reckless" conduct as a mentor, not any animus related to race or age. Hosmer allegedly told Watkins that BNSF would never promote him to Mechanical Foreman, but he offers no support at all for his belief that the statement was based on his race. Indeed, to the extent that Watkins alleges that he complained to upper management about Defendant Hosmer, he says he "repeatedly reported Hosmer's *recklessness*"—not her supposed race- or age-related animus—to Defendant Bartee.

The court need not belabor the point. It notes in conclusion, though, that Watkins has not cited even a single case to support his contention that such allegations amount to a well-pleaded claim for hostile work environment. The court thus dismisses without prejudice the parts of the FAC's Title VII, ADEA, and § 1981 discrimination claims that rest on such a theory.

## IV.    Pattern or Practice Allegations

The FAC contains a few allegations about BNSF's ostensible pattern or practice of discrimination. For example, Watkins alleges that "Defendant BNSF maintains a widespread practice of treating Black employees, . . . especially Watkins[,] less favorably than his co-workers who are not Black." (FAC ¶ 147; *see also id.* ¶¶ 150, 152 (alleging an "unconstitutional custom, pattern, or practice").) Defendants note that "[i]t is unclear whether Watkins intends these allegations merely as evidentiary or intends to assert a specific 'pattern or practice' discrimination claim." (Def.'s Mot. at 10.) In the event that Watkins intended to pursue a standalone pattern-or-practice claim, Defendants ask the court to reject it for several reasons. (*Id.* at 10–12; Def.'s Reply at 5–7.)

15

First, Defendants contend that a pattern-or-practice claim would exceed the boundaries of Watkins's EEOC charge.  (Def.'s Mot. at 10–11 (citing Charge of Discrimination, Ex. A to FAC [16-1]).)  In general, the "scope of a judicial proceeding following an EEOC charge 'is limited by the nature of the charges filed with the EEOC.'"  *Hopkins v. Bd. of Educ.*, 73 F. Supp. 3d 974, 982 (N.D. Ill. 2014) (quoting *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992)).  "[A] plaintiff may only bring claims that are originally included in the EEOC charge or are 'reasonably related to the allegations of the EEOC charge and growing out of such allegations.'"  *Id.* (quoting *Moore v. Vital Prods., Inc.*, 641 F.3d 253, 256–57 (7th Cir. 2011)).

Defendants correctly note that "Watkins' EEOC charge allegations relate solely to himself and his own employment with BNSF."  (Def.'s Mot. at 11.)  And they point out that courts in this district have dismissed pattern-or-practice claims on the grounds that a plaintiff's EEOC charge concerned discrimination against only the plaintiff individually.  *See, e.g.*, *Hamilton v. Summers*, 95 F. Supp. 2d 908, 912–13 (N.D. Ill. 2000).  Disappointingly, Watkins does not respond at all to this part of Defendants' argument.  (*See* Pl.'s Resp. at 5.)  The court notes, however, that § 1981 contains no administrative exhaustion requirement like Title VII or the ADEA do.  *See Fane v. Locke Reynolds, LLP*, 480 F.3d 534, 538–39 (7th Cir. 2007).

Apart from the administrative-exhaustion issue, Defendants contend that Watkins's pattern-or-practice allegations are substantively insufficient.  (Def.'s Mot. at 11–12.)  Defendants note that the FAC "(1) does not identify a specific employment practice or policy, (2) does not contain any of the factual content required of either a disparate impact or other pattern and practice claim, and (3) describes [Watkins's] (purported) experiences alone with nothing more." (*Id.* at 11.)

Again, Watkins essentially does not respond to Defendants' argument.  (*See* Pl.'s Resp. at 5.)  He cites just one unreported decision holding that (1) pattern-and-practice claims "require a showing that an employer regularly and purposefully discriminates against a protected group, and (2) a plaintiff "must prove that discrimination was the company's standard operating

procedure—the regular rather than the unusual practice." (*Id.* (quoting *Murdock-Alexander v. Tempsnow Emp. & Placement Servs. LLC*, No. 16 C 5182, 2016 WL 6833961, at *11 (N.D. Ill. Nov. 21, 2016)).)  But Watkins's allegations satisfy neither of those tests even for Rule 12 purposes.  The FAC contains only speculative, conclusory assertions about BNSF's "widespread practice of racial discrimination."  It is unclear what policy or practice Watkins even alleges.[10]

In his response brief, Watkins says in passing that he "believes that discriminatory conduct similar to that he suffered was experienced by Dexter Coleman and Boris Seawood and will amend the complaint to add allegations once the salient facts have been discovered." (Pl.'s at 5.)  Interpreting that allegation in the fairest way, Watkins believes that after discovery he will be able to offer evidence of discrimination against other (presumably Black) employees in support of his own claim of disparate treatment.  But Watkins must present a well-pleaded claim before he is entitled to such discovery.  The court thus dismisses without prejudice any § 1981 pattern-or-practice claim in the FAC.[11]

## V.    Retaliation Claims

The FAC contains one count of retaliation in violation of Title VII against all Defendants (Count IV) and another, similar count against BNSF only (Count VI [III]).  Watkins also claims retaliation against all Defendants under § 1981 (Count V [II]).  As Defendants contend (and Watkins concedes), "Title VII does not impose individual liability." (Def.'s Mot. at 12–13 (citing

---

[10]    It does not help matters that the FAC contains allegations about BNSF's "unconstitutional" conduct or its "final policymakers." (*See, e.g.*, FAC ¶¶ 150, 152.)  That language "appear[s] to be mistakenly copied from a case involving a public entity" that, unlike Defendant BNSF, would be subject to constitutional limitations. (*See* Def.'s Mot. at 12.)

[11]    The court notes an important distinction, however.  Even where a plaintiff does not assert a freestanding pattern-or-practice claim (or where such a claim has been dismissed), the plaintiff may "use pattern-or-practice *evidence* to support . . . individual claims" of discrimination. *See Vargas v. Price*, No. 17-CV-6481, 2021 WL 698500, at *8 (N.D. Ill. Feb. 23, 2021) (emphasis added).

*Worth v. Tyer*, 276 F.3d 249, 262 (7th Cir. 2001)); Pl.'s Resp. at 5.)  The court therefore dismisses Count IV as against the individual Defendants, with prejudice.[12]

Regardless of who may be held liable for retaliation, Defendants argue that those claims fail because they do not meet Rule 8's notice pleading standard.  (Def.'s Mot. at 13–14.)  To succeed on a retaliation claim under Title VII, the ADEA,[13] or § 1981, a plaintiff must prove that "(1) she engaged in protected activity, (2) she suffered an adverse employment action, and (3) causation."  *Lewis*, 36 F.4th at 761 (citing *Rozumalski*, 937 F.3d at 924; and *Boston*, 816 F.3d at 464).  In Defendants' view:

> [Watkins] does not plead with any clarity (1) when he complained; (2) to whom he complained; (3) what he said, including whether or not he referenced his race or age when he complained; (4) the specific adverse consequence he suffered as a result; (5) who caused the adverse consequence; or, importantly (6) whether that person was even aware of his complaint.  He pleads no fact upon which the Court could reasonably rely to conclude that any purported materially adverse action would not have occurred but-for Watkins' complaint(s).

(Def.'s Mot. at 14.)

Watkins's response is perfunctory.  He cites to a handful of paragraphs of the FAC (*see* Pl.'s Resp. at 6 (citing FAC ¶¶ 64, 81–82, 86–87)), but those allegations, especially without explanation, are insufficient to state a claim for retaliation.

In Paragraph 64, for example, Watkins alleges that he promptly reported the September 2018 truck-related incident that eventually led to his "Level S 30-day Record Suspension" and "one-year review period."  (*See* FAC ¶¶ 63–66.)  It is not clear how Watkins believes this series of allegations would support a retaliation claim—again, he provides no analysis—but the court notes an obvious distinction:   Reporting one's own on-the-job mistake, unlike reporting

---

[12]        This dismissal appears to render Count IV and Count VI [III] duplicative.

[13]        It is unclear whether Watkins intended to plead ADEA retaliation.  His retaliation-related counts (Counts IV, V [II], and VI [III]) mention only race, not age, and the FAC never cites the ADEA's anti-retaliation provision, 29 U.S.C. § 623(d).  Defendants nevertheless argue as if Watkins has asserted a claim for retaliation arising from complaints about age-based discrimination.

discrimination that one believes has occurred, is not "protected activity" within the meaning of the discrimination statutes. *See Ferrill v. Oak Creek-Franklin Joint Sch. Dist.*, 860 F.3d 494, 501 (7th Cir. 2017) ("'Protected activity' is 'some step in opposition to a form of discrimination that [Title VII] prohibits.'" (quoting *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 631 (7th Cir. 2011))). The form of reporting that Watkins alleges in Paragraph 64 plainly cannot provide the basis for a retaliation claim.

In the absence of any more substantive response to Defendant's arguments, the court grants this aspect of their motion and dismisses without prejudice the remainder of the FAC's retaliation claims under Title VII, § 1981, and (in the event that Watkins intended to assert such a claim) the ADEA.

## VI.    Negligent Supervision Claim

Finally, Defendants contend that Watkins's state-law tort claim for negligent supervision by Defendant BNSF (Count VIII [VI]) is preempted by either the Federal Employers Liability Act, 45 U.S.C. §§ 51 *et seq.* ("FELA"), or the Illinois Human Rights Act, 775 ILCS 5/1-101 *et seq.* ("IHRA").  (Def.'s Mot. at 14–15; Def.'s Reply at 8–10.)  Regardless of preemption, Defendants argue, in addition, that Watkins has failed to state a claim for negligent supervision.  (Def.'s Mot. at 15; Def.'s Reply at 7.)

The court agrees.  In Illinois, "[t]he elements of a negligent supervision claim are that '(1) the defendant had a duty to supervise the harming party, (2) the defendant negligently supervised the harming party, and (3) such negligence proximately caused the plaintiff's injuries.'"  *Herrera v. Di Meo Bros., Inc.*, 529 F. Supp. 3d 819, 832 (N.D. Ill. 2021) (quoting *Doe v. Coe*, 2019 IL 123521, ¶ 52, 135 N.E.3d 1, 15 (2019)).  As Defendants assert (Def.'s Mot. at 15)—and, again, Watkins does not respond (Pl.'s Resp. at 6–8)—Watkins offers no basis for his assertion that BNSF was negligent or that any injury he suffered was foreseeable.  In short, Watkins has failed to provide the minimum of factual detail necessary to enable "the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  For example, because it

is entirely unclear from the FAC what type of training, supervision, or monitoring Watkins believes Defendant BNSF could or should have provided to its employees, it is not possible to reasonably infer that BNSF was negligent or that its negligence injured Watkins. Watkins's negligent supervision claim is dismissed for this reason alone.

As the court will grant Watkins leave to file a second amended complaint, however, it is worth noting that the Defendants' preemption arguments also have merit. Watkins's negligent supervision claim is premised on both (1) Defendant Kloberdanz's alleged assault and battery, and (2) other race-based harassment that Watkins alleges he was subjected to by employees in the workplace. (*See* FAC ¶¶ 161–69.) This distinction triggers two separate preemption inquiries: one under FELA, the other under the IHRA.

### A.      FELA Preemption: Assault and Battery by Defendant Kloberdanz

FELA "creates a federal tort remedy for railroad employees injured on the job and 'provide[s] the framework for determining liability for industrial accidents.'" *Harris-Scaggs v. Soo Line R.R. Co.*, 2 F. Supp. 2d 1179, 1181 (E.D. Wis. 1998) (quoting *Kernan v. Am. Dredging Co.*, 355 U.S. 426, 432 (1958)); *see also* 45 U.S.C. § 51. The statute "generally provides the exclusive remedy for railroad employees seeking to recover for personal injury sustained in the course of employment," at least where "the plaintiff suffers a physical injury or [a] non-physical injury resulting from physical impact." *Starks v. Ne. Ill. Reg'l Commuter R.R. Corp.*, 245 F. Supp. 2d 896, 899 (N.D. Ill. 2003) (citing *Erie R.R. Co. v. Winfield*, 244 U.S. 170 (1917); and *Consol. Rail Corp. v. Gottshall*, 512 U.S. 532 (1994)). Defendants argue that part of Watkins's negligent supervision claim falls within FELA's scope because Watkins seeks to hold BNSF liable for a physical injury (and resultant emotional injury) that he suffered while on the job as a railroad employee. (Def.'s Mot. at 14–15.)

Watkins responds to this argument only with generalities. As he points out, FELA does not "'displace all relevant state law'"; it merely "preempts state law within its domain." (*See* Pl.'s Resp. at 7–8 (quoting *Harris-Scaggs*, 2 F. Supp. 2d at 1184).) But Watkins does not explain how

own claim for negligent supervision does not, in fact, fall "within [FELA's] domain."[14]  Given the nature of his allegations about Defendant Kloberdanz's assault and battery, Watkins seeks to hold Defendant BNSF liable for physical and emotional injuries resulting from a *physical* impact proximately caused by BNSF's own negligence.  (*See* FAC ¶¶ 154–59, 161–69.)  That fact suggests that his claim may be preempted.

### B.      IHRA Preemption: Harassment by Other Employees

Defendants argue that the second aspect of Watkins's negligent-supervision claim, which relates to various race-based harassment that Watkins was subjected to by other BNSF employees, is preempted by the IHRA.

The IHRA gives the Illinois Human Rights Commission "exclusive jurisdiction over allegations of civil rights violations brought under Illinois law." *Bianca v. Univ. of Ill.*, 513 F. Supp. 3d 983, 989 (N.D. Ill. 2021) (citing 775 ILCS 5/8–111(D); and *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 602 (7th Cir. 2006)).  The IHRA preempts state tort claims that are "inextricably linked to a civil rights violation such that there is no independent basis for the action apart from the Act itself."  *Naeem*, 444 F.3d at 602 (quoting *Maksimovic v. Tsogalis*, 177 Ill. 2d 511, 517, 687 N.E.2d 21, 23 (1997)).  The IHRA prohibits, among other things, discrimination by an employer on the basis of race, and it provides that, under certain conditions, an employer may be held responsible for race-based "harassment by the employer's nonmanagerial and nonsupervisory employees." *See* 775 ILCS 5/2-102(A); *id.* § 5/1-103(D), (Q).

---

[14]      The main case that Watkins cites on this score, *Harris-Scaggs*, does not support his position.  That case involved claims for negligent and intentional infliction of emotional distress that unquestionably had *not* resulted from a physical impact.  *See Harris-Scaggs*, 2 F. Supp. 2d at 1183.  The court held that the claim was not actionable under, or otherwise preempted by, FELA because it failed the common law "zone of danger" test.  *Id.* ("The complaint alleges no physical contact in the conduct of [the railroad's] managers or co-employees, and no immediate risk or threat of physical harm to [the plaintiff]." (citing *Gottshall*, 512 U.S. at 547–48; and *Lancaster v. Norfolk & W. Ry. Co.*, 773 F.2d 807, 813 (7th Cir. 1985))).  Here, Watkins's alleged injury arose from a physical impact, so the cited language suggests it does indeed fall within FELA's scope.

To determine whether a plaintiff's tort claim is "inextricably linked" to a duty imposed by the IHRA, the court asks "whether the plaintiff can establish 'a basis for imposing liability on defendants . . . without reference to the legal duties created by the [IHRA].'" *Nischan v. Stratosphere Quality, LLC*, 865 F.3d 922, 934 (7th Cir. 2017) (quoting *Blount v. Stroud*, 232 Ill.2d 302, 314–15, 904 N.E.2d 1, 9 (2009)). Defendants say Watkins cannot do this because his claim hinges on IHRA-imposed duties to prevent race-based discrimination and harassment in the workplace. Based on its review of IHRA cases cited by Defendants—to which Watkins has not meaningfully responded—the court agrees that the IHRA likely preempts the aspects of his negligent supervision claim premised on harassment by other BNSF employees. *See, e.g.*, *Knowles v. Henkels & McCoy Inc.*, No. 20 C 3113, 2021 WL 4499492, at *1 (N.D. Ill. Jan. 5, 2021) (holding that the IHRA preempted negligent supervision claim where plaintiff alleged that defendant had failed to prevent or respond to racial discrimination in workplace); *see also Bianca*, 513 F. Supp. 3d at 989–90 (holding that the IHRA preempted negligent supervision claim where plaintiff sought "to hold [the defendant] liable for breaching his purported duties to protect his employees from sexual harassment and to respond to complaints of sexual harassment"); *Barclay v. Bio-Med. Applications of Ill., Inc.*, No. 18 C 7260, 2019 WL 1200330, at *2 (N.D. Ill. Mar. 14, 2019) (holding that the IHRA preempted negligent supervision claim where plaintiff alleged that defendant failed to properly investigate allegations of sexual harassment and to take prompt remedial action to prevent further harassment); *cf. Nischan*, 865 F.3d at 934 (holding that the IHRA preempted intentional-infliction-of-emotional-distress claim where, "if we were [to] take the civil-rights allegations out of the complaint, no claim for intentional infliction of emotional distress would remain").

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss [19] is granted in part and denied in part. The sole claim against Defendant BNSF, Defendant Haynes, or Defendant Bartee to survive this motion is Watkins's claim that Defendants violated § 1981 in failing to promote him based on

his race (Count V [II]).  The court dismisses all other claims asserted in the First Amended Complaint against Defendants BNSF, Haynes, and Bartee—including the other theories advanced as part of Count V [II], such as hostile work environment, retaliation, and pattern-or-practice discrimination. The dismissals for failure to state a claim are without prejudice; the dismissals for all other reasons are with prejudice.  Watkins has leave to file a second amended complaint—if he can do so consistent with Federal Rule of Civil Procedure 11—within 21 days of this Order.

The court also orders Watkins to show good cause, within 21 days, as to why the First Amended Complaint should not be dismissed with respect to Defendants Mulberry, Hosmer, and Kloberdanz, who have not appeared in this case and for whom Watkins has provided no proof of service.  *See* FED. R. CIV. P. 4(m).

ENTER:

Dated:  September 21, 2022

_____
REBECCA R. PALLMEYER
United States District Judge