UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SHANDALE C. WATKINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BNSF RAILWAY CO., a Delaware corporation, | ) | |
| BRANDON MABRY, individually and in | ) | No. 21 C 3547 |
| his official capacity as Chief Mechanical | ) | |
| Officer of Chicago Div., MICHAEL HAYNES, | ) | |
| individually and in his official capacity as GM, | ) | Judge Rebecca R. Pallmeyer |
| KEVIN BARTEE, individually and in his | ) | |
| official capacity as Asst. GM, ANNA | ) | |
| HOSMER, individually and in her official | ) | |
| capacity as Developer, and RAYMOND | ) | |
| KLOBERDANZ, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Shandale C. Watkins alleged that his employer, BNSF Railway Company, discriminated against him on the bases of race and age. On September 21, 2022, the court dismissed his initial complaint against BNSF and five current or former BNSF employees, but granted leave to file an amended complaint, and Plaintiff did so. (*See* Memorandum Opinion and Order ("Memo") [25].) In his Second Amended Complaint ("SAC") [31], filed on October 28, 2022, Plaintiff withdrew his age discrimination claim but presses his allegations of race discrimination and retaliation in violation of Title VII and 42 U.S.C. § 1981. BNSF and individual Defendants have moved to dismiss all the claims in Plaintiff's SAC except for his claim under § 1981 of failure to promote based on his race.

In its earlier opinion, the court ordered Watkins to show cause why Plaintiff's claims with respect to Defendants Mabry, Hosmer, and Kloberdanz should not be dismissed; Watkins had provided no proof of service on those Defendants. Watkins has failed to show good cause for his failure to serve these Defendants; he explained that BNSF had refused to accept service (Pl.'s

Resp. to Order to Show Cause [32] at ¶ 3), but Defendant's refusal to assist Plaintiff does not excuse his failure to serve process as required by FED. R. CIV. P. 4.[1] *Cardenas v. City of Chicago*, 646 F.3d 1001, 1005 (7th Cir. 2011). As more than a year has passed since the deadline for Watkins to serve these Defendants, and he has failed to do so, the court denies Plaintiff's request for leave to serve Defendants Mabry, Hosmer, and Kloberdanz and dismisses the case as against them. *United States v. McLaughlin*, 470 F.3d 698, 700 (7th Cir. 2006); *United States v. Ligas*, 549 F.3d 497, 501 (7th Cir. 2008) ("If the plaintiff cannot show good cause, then the decision to grant an extension is left to the discretion of the court.").

## BACKGROUND

As before, in ruling on Defendants' motion to dismiss, the court accepts all factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021).

### I. Parties

Defendant BNSF Railway Co. ("BNSF") is a freight railroad company that provides railway services nationally, including in the Chicago area. (SAC ¶ 2.) Plaintiff Watkins is a Black male who has worked for Defendant BNSF since 2013. (*Id.* ¶¶ 1, 18.) Watkins works at BNSF's Chicago Division at a facility known as "Chicago Corwith." (*Id.* ¶ 19.) Defendants Michael Haynes and Kevin Bartee, both Black males, were the General Manager and Assistant General Manager, respectively, at Chicago Corwith. (*Id.* ¶¶ 4, 5.) Both Haynes and Bartee had decision-making authority for hiring, promotions and discipline. (*Id.*) The court refers to BNSF, Haynes, and Bartee (i.e., the Movants) together as "Defendants."

---

[1] For its part, BNSF reports that no one by the name of Anna Hosmer has worked for BNSF, and that Watkins may be referring to a former employee named Anna Haynes, who has not worked at BNSF for several years. BNSF did not accept service on Haynes's behalf, nor on behalf of Mabry, who resides in Texas. BNSF asserts that Plaintiff has never requested BNSF's assistance with serving Kloberdanz, and that in any event BNSF would not waive service for any current non-management employee, such as Kloberdanz.

## II. Discrimination in Promotions

BNSF hired Watkins in February 2013 as a "Mechanical Carman." (*Id.* ¶ 18.) On December 11, 2016, Watkins earned his Front-Line Supervisor certificate which enabled him to participate in the "Relief Foreman" program—a voluntary program for BNSF employees who are interested in being promoted to the position of "Mechanical Foreman." (*Id.* ¶¶ 27-29, 32.) But participation in the Relief Foreman program does not guarantee promotion; Watkins acknowledges in his SAC that BNSF "does not have enough Foreman positions to make sure that all employees who participate in the program . . . can get promoted" and that only "a very small percentage of employees" are eventually promoted. (*Id.* ¶¶ 40, 41.) Since October 2015, Watkins has worked at BNSF as a Relief Foreman.[2] (*Id.* ¶ 65.)

Between 2015 and 2019, Watkins unsuccessfully applied for the "Mechanical Foreman" position sixteen times.[3] (*Id.* ¶ 66.) Watkins believes he is qualified based, among other things, on his educational background and his relevant experience working as a Relief Foreman. (*Id.* ¶¶ 64, 65, 67.) On at least one occasion, Watkins alleges, a non-Black applicant was promoted over him despite having less experience. (*Id.* ¶¶ 44, 54, 76.) Specifically, Watkins claims a "Spanish" co-worker referred to as Mr. Bautista was promoted over him even though Watkins himself had trained Bautista, and Bautista had arrived late to his interview for the position. (*Id.* ¶ 54.)

Watkins repeatedly complained to BNSF management about being passed over for promotion. (*Id.* ¶¶ 49, 56, 69.) In 2021, he talked with both Defendant Haynes and Defendant Bartee about promotion opportunities. (*Id.* ¶ 73.) They advised him that there was currently no

---

[2] Plaintiff has not explained how it is that Watkins earned his Front-Line Supervisor certificate in December 2016, a requirement for participation in the Relief Foreman program, but allegedly began working as a Relief Foreman in October 2015.

[3] Watkins alleges, further, that between January 2015 and September 2020 he sought a total of 36 positions within BNSF, but was not selected for any of them (SAC ¶ 63); he does not identify those other positions or describe the qualifications for those positions.

room in the budget but that, if a Mechanical Foreman position became available, they would let him know. (*Id.* ¶ 74.) Soon thereafter, Defendant Haynes announced at a meeting that some Mechanical Foreman positions would soon be opening up. Watkins believes Haynes and Bartee misled him when they said that there was no money to promote him as a Foreman, but he has not stated how much time passed between the statement about the budget and the announcement of upcoming openings. (SAC ¶ 75.)

### III.   Watkins's Allegations of Hostile Environment

Watkins alleges that he was the victim of harassment, unfair treatment, and retaliation at BNSF. (*See id.* ¶¶ 44–138.) The individual Watkins identifies as Anna Hosmer, who was Watkins's mentor in the Foreman Relief Program, told him, sometime before the summer of 2017, "Don't you get it? You will never make it because no one wants to hire someone like you." (*Id.* ¶ 46.) Watkins interpreted this comment as a statement that he would not be promoted because of his race and, some time after hearing the statement, Watkins resigned from the Foreman Relief Program in response[4] (he did rejoin the program at a later date). (*Id.* ¶¶ 46, 47, 48.) According to Watkins, another Black employee at BNSF also left the Foreman Relief program because he felt discouraged by the lack of recognition he received. (*Id.* ¶¶ 50–53.)

Watkins alleges he was again treated unfairly on September 14, 2018. Watkins was involved on that date in an incident in which he "slammed on the breaks[sic]" of his vehicle to avoid colliding with a light pole. (*Id.* ¶ 77.) Watkins did not in fact hit the pole, and there was no damage to the vehicle,[5] but his supervisors, Defendants Bartee and Haynes, initiated a disciplinary hearing after the incident, and it was determined that the vehicle was damaged. (*Id.* ¶¶ 80, 81.) Watkins requested that BNSF provide him with photographic evidence of the damage

---

[4]   Watkins complaint details a lengthy resignation email that he submitted, but does not say to whom he sent it; the resignation email in the cited exhibit shows Watkins as both the sender and the recipient of the email. (*See* Ex. E to SAC [31-3].)

[5]   Plaintiff's SAC cites to an exhibit ("Exhibit J") that purportedly contains "Drive Cam" footage of the incident, but that exhibit is not in the record.

as well as vehicle assessment reports completed after the incident, but his requests were denied, and he was given a "Level S 30-day Record Suspension with a one-year review period." (*Id.* ¶¶ 82, 83, 85.) The Transportation Communications Union unsuccessfully appealed the discipline on Watkins's behalf. (*Id.* ¶¶ 86–88.) During that suspension period, on July 14, 2018, Watkins was unfairly accused of tardiness when he arrived 7 minutes late to work, and his supervisor refused to accept evidence that an active shooting and traffic jam was the reason for his tardiness.[6] (*Id.* ¶ 90.) (The complaint does not say whether there was any resulting discipline apart from the accusation.)

In another incident, on April 30, 2021, Watkins was disciplined for an accident caused by another employee. (*Id.* ¶¶ 91, 92.) Watkins says that a white male crane operator should have stopped operating a crane when sun glare interfered with his vision, but failed to do so and hit a parked vehicle. (*Id.* ¶ 92.) Watkins notes that a "Crane Safety Assistant" who should have been on the ground at this time was not there. (*Id.* ¶ 93.) Watkins had parked the work vehicle involved in the incident and was charged with a rules violation for having parking the vehicle in a "lift equipment lane." (*Id.* ¶ 91.) Watkins was again assessed a "Level S 30 Day Record Suspension and 3 Year Review Period" for his involvement in the incident, but the crane operator was not disciplined. (*Id.* ¶ 95.) Again, the Union's appeal from this discipline imposed on Watkins was not successful. (*Id.* ¶¶ 96, 97.) Watkins was not permitted to participate in the Relief Foreman program while he was serving his suspension, and he alleges "upon information and belief, that a "Spanish" employee at BNSF, Urial Campos, was permitted to participate in the program while on suspension. (*Id.* ¶ 101.)

The final specific incident cited in the SAC involved another employee named Raymond Kloberdanz. Watkins alleges that on July 4, 2021, while he was in his work vehicle, Kloberdanz intentionally sprayed him in the face with "an unknown liquid substance" from a fire extinguisher.

---

[6] Again, here, Watkins cites to Ex. J, which is not in the record.

(*Id.* ¶ 102.) Watkins was hospitalized as a result of the attack, and while he was in the hospital, Defendant Bartee harassed him in that Bartee "wanted to force" Watkins to submit to a drug test. (*Id.* ¶ 107.) Watkins does not say whether he actually underwent a drug test, or how he became aware that Bartee wanted him to do so. Watkins alleges on "information and belief" that Kloberdanz "fully confessed the battery to management," but BNSF staff nevertheless discouraged Watkins from pressing charges. (*Id.* ¶¶ 110, 112.) Kloberdanz has in fact been formally charged with Misdemeanor Battery and Disorderly Conduct and at the time of filing the SAC, the case was pending; BNSF has not disciplined Kloberdanz, who remains employed with BNSF. (*Id.* ¶¶ 109-112.) Since the time of that incident, Watkins alleges, Kloberdanz has been calling and leaving voicemails for Watkins; the complaint does not state the dates of these calls nor their content. (*Id.* ¶ 113.) BNSF conducted a "fact-finding investigation" of the incident between Watkins and Kloberdanz; the investigator completed the investigation in September 2021 and reported he was "unable to substantiate" that Kloberdanz's conduct "could reasonably be interpreted as humiliating, antagonizing or retaliatory towards Watkins."[7] (*Id.* ¶ 117.)

Watkins contends that the differential treatment and discipline he received was based either on his race or was imposed as retaliation for his previous complaints about discrimination. (*See id.* ¶¶ 139–183.) Watkins claims that since July 17, 2017, he complained "on multiple occasions" to his managers about not being promoted and that on October 6, 2020, and he reported "what he perceived to be a discriminatory situation" to the HR Director Alyssa Lavorata.[8] (*Id.* ¶¶ 56, 69, 158.) Watkins says these combined events have been an "absolute nightmare" and "pure mental, emotional, and psychological torture" for him. (*Id.* ¶¶ 118, 121.) Watkins also

---

[7] Watkins cites to an exhibit ("Ex N") that is not in the record.

[8] Watkins alleges that he recorded his conversation with Ms. Lavorata and that an audio file of the conversation is located in "Ex. G"; the court has not seen this exhibit in the record.

6

reports that he experiences migraines and elevated blood pressure from the stress related to his work environment.[9] (*Id.* ¶ 125.)

## PROCEDURAL HISTORY

Watkins filed an EEOC charge on February 2, 2021, alleging race-based discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), and age-based discrimination in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 *et seq.* ("ADEA"). (*See* Charge of Discrimination, Ex. A to SAC [31-1].) He alleged in his EEOC charge that he had been "subjected to denial of promotions, harassment, disparate treatment, and a hostile work environment" based on his race and age, and that he had been retaliated against for engaging in protected activity. (*Id.*) The EEOC closed Watkins's case on March 30, 2021 (*see* Notice of Right to Sue, Ex. B to SAC [31-2]), and he filed this lawsuit on July 1, 2021. (Initial Complaint [1].) Watkins later withdrew the initial complaint, and filed a First Amended Complaint; as noted, the court granted Defendants' motion to dismiss that First Amended Complaint in large part. (*See* Memo; *Watkins v. BNSF Railway Co.*, No. 21 C 3547, 2022 WL 4386684 (N.D. Ill. Sept. 22, 2022).

In the operative Second Amended Complaint [31], Watkins asserts claims for race-based discrimination by Defendants in violation of Title VII and § 1981, including disparate discipline, a hostile work environment, retaliation, and pattern and practice of discrimination (Counts I, II, III); conspiracy to obstruct justice under § 1985 (Count IV); assault and battery by Kloberdanz (Count V); and negligent supervision against BNSF (Count VI). He also alleges a failure to promote in violation of § 1981; BNSF has not moved to dismiss that claim. The court therefore will not address that claim and, in the analysis below, addresses only Counts I, II, III, and VI. Count IV contains conspiracy allegations against Kloberdanz and two other individuals, Lavorata and

---

[9] Watkins cites to a medical record ("Ex O") that is not in the record.

another named "Pittl"; Count V is against Kloberdanz alone. As none of these individuals have been named as Defendants and served in this case, Counts IV and V are dismissed.[10]

## LEGAL STANDARD

A complaint must include a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A motion to dismiss under Rule 12(b)(6) "challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6); *Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 825 (7th Cir. 2015). While "detailed factual allegations are unnecessary, the complaint must have 'enough facts to state a claim to relief that is plausible on its face.'" *Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). That task is "context-specific" and "requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. In deciding a motion to dismiss, the court accepts all factual allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiff. *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021).

## DISCUSSION

Title VII prohibits an employer from discriminating against an employee on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1) (prohibiting discrimination "with respect to [an employee's] compensation, terms, conditions, or privileges of employment").

---

[10] Even if the three individuals were named parties in this case, Plaintiff's conspiracy claim would likely fail. Plaintiff asserts that BNSF employees Pittl, Lavorata, and Kloberdanz "acted on behalf of the corporate Defendant BNSF" to obstruct justice. However, it is settled law that a corporation cannot conspire with itself. *Dombrowski v. Dowling*, 459 F.2d 190, 196 (7th Cir. 1972); *see also Houston v. Jewel Companies, Inc.*, No. 85 C 10108, 1986 WL 5659, at *3 (N.D. Ill. May 6, 1986) (stating that courts in this district "have repeatedly read *Dombrowski* to preclude a finding of conspiracy between a corporation and its agents and employees")

Title VII also prohibits employers "from retaliating against their employees because an employee complained of discrimination" outlawed by the respective statute. *Lewis v. Ind. Wesleyan Univ.*, 36 F.4th 755, 761 (7th Cir. 2022); *see also* 42 U.S.C. § 2000e-3(a) (Title VII). Title VII does not expressly mention a hostile work environment as a form of discrimination, but courts have recognized actionable discrimination where a workplace is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Brooks v. Avancez*, 39 F.4th 424, 441 (7th Cir. 2022) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78 (1998)).

To establish a discrimination claim under Title VII, a plaintiff must allege that she suffered an adverse employment action because she is a member of a protected class. *Lewis*, 36 F.4th at 759 (citing *Abrego v. Wilkie*, 907 F.3d 1004, 1012 (7th Cir. 2018)). A Title VII retaliation claim requires a showing that plaintiff engaged in protected activity and suffered an adverse employment action as a result. *Id.* at 761 (citing *Rozumalski v. W.F. Baird & Assocs., Ltd.*, 937 F.3d 919, 924 (7th Cir. 2019); and *Boston v. U.S. Steel Corp.*, 816 F.3d 455, 464 (7th Cir. 2016)(same standard under Age Discrimination in Employment Act)). For a hostile work environment theory, a plaintiff must show that the work environment was both objectively and subjectively offensive, that the offensive conduct was severe or pervasive, and that it was based on plaintiff's membership in a protected class or in retaliation for protected activity. *Boss v. Castro*, 816 F.3d 910, 920 (7th Cir. 2016) (citing *Nichols v. Mich. City Plant Plan. Dep't*, 755 F.3d 594, 600 (7th Cir. 2014)).

Watkins also seeks relief under 42 U.S.C. § 1981, which guarantees "the right to be free of racial discrimination in the making and enforcing of contracts," including those for employment. *Morgan v. SVT, LLC*, 724 F.3d 990, 995 (7th Cir. 2013). "[T]he methods of proof and elements of [a § 1981] case are essentially identical" to those in a Title VII case. *McGowan v. Deere & Co.*, 581 F.3d 575, 579 (7th Cir. 2009); *see also Lewis*, 36 F.4th at 759 (noting only minor differences

9

in the statutes' causation standards). Section 1981 also prohibits an employer from retaliating against an employee for engaging in protected activity, *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 445 (2008), and allows an employee to pursue a discrimination claim on a hostile work environment theory, *see, e.g.*, *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 544 (7th Cir. 2011).

### I. Title VII Claims

As they did in response to Plaintiff's earlier pleading, Defendants argue that Watkins's Title VII claims are time-barred. In Illinois, a plaintiff asserting a Title VII claim must first file an administrative charge with the EEOC within 300 days of the alleged unlawful employment practice. *Chatman v. Bd. of Educ.*, 5 F.4th 738, 744 (7th Cir. 2021); *see also* 42 U.S.C. § 2000e-5(e)(1) (Title VII). "The EEOC then gives the plaintiff notice of her right to sue, at which point the plaintiff has 90 days to file her lawsuit." *Taylor v. Nw. Mem'l Hosp.*, 521 F. Supp. 3d 714, 715 (N.D. Ill. 2021); *see also* 42 U.S.C. § 2000e-5(f)(1).

Watkins filed his administrative charge on February 2, 2021. (See Charge of Discrimination, Ex. A to SAC [31-1].) Defendants urge the court to dismiss any of Watkins's claims of discrimination, retaliation, or purported harassment that arose before April 8, 2020 (which is 300 days earlier) or after February 2, 2021 (which is the date he filed his EEOC charge). As BNSF sees things, this requires dismissal of all of Watkins's Title VII claims. BNSF is correct, but only with respect to Watkins's race discrimination claims. In this Circuit, an employment discrimination plaintiff may raise, in a court filing, retaliatory events that occurred after he filed his EEOC charge. *See Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1030 (7th Cir. 2013) (holding that "a plaintiff who alleges retaliation for having filed a charge with the EEOC need not file a second EEOC charge to sue for that retaliation") (citations omitted). That means that any alleged retaliation that post-dates his charge can properly be presented here.

Urging that the court should reject the timeliness challenge for all of his claims, Watkins invokes the "continuing violation" theory. As he did in response to Defendants' earlier motion to dismiss, Watkins cites *Tinner v. United Insurance Co. of Am.*, 308 F.3d 697 (7th Cir. 2002). As

the court explained in its earlier ruling, however, *Tinner* makes clear that in order to successfully bring a claim under the continuing violation theory, "at least one of the discrete acts [must have] occurred within the relevant limitations period." *Id.* at 707. That test is not met here.

A claim of retaliation that post-dates the filing of Watkins's charge would, as explained above, be actionable, and Watkins has described two incidents that occurred after February 2, 2021. But the allegations of those incidents do not support a claim of retaliation. Plaintiff alleges that he, but not the white crane operator, was disciplined after the April 2021 incident and that he was denied Relief Foreman assignments, though a "Spanish" worker in similar circumstances was not. Those are claims of race discrimination, not retaliation. The July 4, 2021 episode involving Kloberdanz is troubling, but also does not add up to a claim of retaliation by Defendants. Watkins was injured and required medical treatment, but he has not alleged that he suffered any adverse employment action, nor any basis on which the court could find a causative link between any protected conduct and the assault. To the contrary, Watkins has alleged that Kloberdanz assaulted him for "no known reasons." (SAC ¶ 102.)

Because Plaintiff has not alleged claims of discrimination that occurred April 8, 2020, and before he filed his charge on February 2, 2021, or claims of retaliation by Defendants that occurred thereafter, the court again Watkins's Title VII claims as untimely.

## II. Section 1981 Claims

As noted, Watkins's failure-to-promote claims are not challenged on this motion and will proceed. Defendants argue that Watkins's remaining § 1981 claims—for disparate discipline, hostile work environment, retaliation—must be dismissed. The court addresses each of these in turn.

### A. Disparate Discipline

Watkins identifies three instances of what he believes is unfair discipline: the occasion where he was tardy for his work shift on July 2018; the September 2018 incident involving his braking before he hit a pole; and the July 2021 incident involving the crane operator. Defendants

11

argue that Watkins has not mentioned race with respect to any of these incidents and has not so much as identified the person(s) who made the decisions to discipline him. With respect to the July 2018 tardiness episode, Defendants argue that the incident involved nothing more than a warning on a single occasion where Watkins admits he arrived late.

Watkins has made no effective effort to address Defendants' arguments, and at one point cites to the Third Circuit Pattern Jury Instructions (his reason for doing so is a mystery). (Pl.'s Resp. [39] at 16.) He argues that the identity of the individuals who disciplined him is "readily ascertainable by the documents which Plaintiff attached to the Complaint"; but the only documents that Plaintiff has attached are his EEOC Charge of Discrimination [31-1], his Notice of Right to Sue from the EEOC [31-2]; and an email containing his notice of resignation from the Relief Foreman Program [31-3]. None of these documents identify any of the individuals that disciplined Watkins on these occasions. Watkins believes he should not have been disciplined for the incident in September 2018, but his allegations provide no basis for the conclusion that race was the reason. The warning for tardiness does not rise to the level of an adverse action. *See Oest v. Illinois Dep't of Corr.*, 240 F.3d 605, 613 (7th Cir. 2001), *overruled on other grounds by Ortiz v Werner Enters.*, 834 F.3d 760, 765 (7then Cir. 2016). The court agrees with Defendants that Plaintiff has failed to adequately allege disparate discipline with respect to the two incidents that occurred in 2018.

That leaves the claim of disparate discipline following the crane incident in 2021. Watkins's allegations about this incident are thin, but Watkins does allege in his SAC that a white employee operating a crane caused the accident that resulted in Watkins, but not the white crane operator, being disciplined. These allegations, the court concludes, are sufficient (if barely so) to state a claim of disparate treatment. Watkins's claim of disparate treatment in violation of § 1981 survives this motion.

### B. Hostile Work Environment

A hostile work environment claim requires a plaintiff to show that "(1) the work environment was both objectively and subjectively offensive; (2) the harassment was based on membership in a protected class or in retaliation for protected behavior; (3) the conduct was severe or pervasive; and (4) there is a basis for employer liability." *Boss*, 816 F.3d at 920. "To rise to the level of a hostile work environment, conduct must be sufficiently severe or persuasive to alter the conditions of employment such that it creates an *abusive* relationship." *Huri v. Off. of the Chief Judge of the Cir. Ct. of Cook Cnty.*, 804 F.3d 826, 834 (7th Cir. 2015) (emphasis in original).

Defendants argue that Watkins has failed to plead that the workplace conduct that he complains about is related to his race and that the conduct is not sufficiently severe or pervasive to be actionable. And, as Defendants urge, Plaintiff has abandoned the claim by failing to substantively respond to their arguments. The court agrees. Watkins is correct that the summary judgment cases Defendants cite refer to the evidence he must *prove* in order to establish his claims of discrimination; at this stage, Watkins is only required to *allege* such claims. But even read generously, his allegations do not yet meet that burden. Last year, reviewing allegations nearly identical to the ones presented here, the court concluded that Watkins's allegations of race-based discrimination are "too vague, disparate, and conclusory to make the story 'hold together.'" [Memo at 14.] The court stands by that conclusion. Watkins's § 1981 hostile work environment claim is dismissed.

### C. Pattern or Practice Allegations

To the extent that Watkins has asserted a specific "pattern or practice" discrimination claim, Defendants ask the court to reject it on the basis that the SAC does not identify a specific employment practice, nor does it describe a pattern of discriminatory practices. The court does not believe such a claim has been alleged, and Watkins does not address the matter in his response brief. Any pattern-or-practice claim is dismissed. *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) (noting that a court may dismiss a case with prejudice, at the pleading

13

stage, where a plaintiff "effectively abandons the litigation by not responding to alleged deficiencies in a motion to dismiss").

### D. Retaliation Claims

Watkins also claims retaliation against Defendant BNSF under § 1981. To succeed on such a claim, a plaintiff must allege that "(1) she engaged in protected activity, (2) she suffered an adverse employment action, and (3) causation." *Lewis*, 36 F.4th at 761 (citing *Rozumalski*, 937 F.3d at 924; and *Boston*, 816 F.3d at 464). Defendants argue that Watkins's claims here fail because they do not sufficiently plead protected activity, do not identify an adverse employment action that followed his purported complaints, and do not suggest any nexus between his complaints and any adverse employment action.

Watkins responds to Defendants' arguments by pointing to two instances where he claims to have engaged in protected activity and was subsequently unfairly disciplined. The first is a conversation Watkins had with HR Director Lavorata, to whom he complained about "what [he] perceived to be discriminatory" in the promoting of foremen. (SAC ¶¶ 56–58.) The other instance was Watkins's July 27, 2017 resignation email—he does not specify to whom he sent it—in which he cryptically stated that "I'm realizing the discouraging information told to me on numerous occasions from a regular foreman" in describing his frustration in not being promoted. (*Id.* ¶ 49.)

Defendants urge that Watkins does not allege that he even mentioned racial discrimination in either his conversation with Lavorata or his resignation email, and that Watkins has not identified any specific adverse employment action that followed. Plaintiff's cryptic reference to "discouraging information . . . from a regular foreman" is unhelpful without some basis for determining who it was that Watkins directed his e-mail to. But his burden at the pleading stage is not a heavy one, and the court concludes he has minimally met it. His complaints to HR mentioned discrimination, and Director Lavorata may well have understood those complaints and perhaps shared them with Watkins's supervisors. Watkins is likely to face difficulty in establishing a causal link between any of these communications or complaints and any alleged subsequent

14

unfair discipline—but that is a question for consideration at the summary judgment or trial stage. The court declines to dismiss his § 1981 retaliation claims.

### III.     Negligent Supervision

Lastly, Defendants again move to dismiss Watkins state-law tort claim for negligent supervision by BNSF. The court's previous ruling detailed at length why Plaintiff's negligent supervision claim failed to state a claim and how it was likely preempted. (Memo at 19–22.) Plaintiff's SAC nevertheless repleads Count IV almost identically to the earlier version, and Plaintiff has not responded to Defendants' preemption challenge or offered any additional analysis. The negligent supervision claim is dismissed.

### CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss [34] is granted in part and denied in part. Each of Watkins's Title VII claims is dismissed. Watkins's § 1981 claims for hostile work environment, pattern-or-practice of discrimination, and negligent supervision are dismissed. Defendants Mabry, Hosmer, and Kloberdanz are dismissed from this case. What remains are Watkins's § 1981 claims for failure to promote, disparate discipline, and retaliation against Defendants BNSF, Haynes, and Bartee. Defendants are directed to file an answer to those claims on or before October 23, 2023.

ENTER:

Dated:  September 30, 2023

_____
REBECCA R. PALLMEYER
United States District Judge

15